In re Estate of Lloyd E. Potthoff, deceased.
Marianne K. Potthoff, appellant, v.
Elvira M. Potthoff, appellee.

733 N.W.2d 860

Filed June 29, 2007.    No. S-05-1299.

Terry L. Rogers, of Terry L. Rogers Law Firm, for appellant.

Ronald D. Mousel, and, on brief, Nancy S. Johnson, of Mousel & Garner, for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.
## NATURE OF CASE
The county court for Red Willow County determined that Lloyd E. Potthoff did not sever the joint tenancies in personal and real property he held with his estranged wife, Elvira M. Potthoff, by the execution of two documents entitled "Notice of Severance of Joint Tenancy." Marianne K. Potthoff, the daughter of Lloyd and Elvira, appeals the county court's decision.

## BACKGROUND
Lloyd filed a petition for dissolution of marriage from Elvira, and, on May 28, 2002, the district court for Red Willow County issued an order prohibiting Lloyd and Elvira from "transferring, encumbering, hypothecating or in any manner disposing of" any real or personal property. On August 27, 2002, Lloyd executed and had notarized two identical "Notice[s] of Severance of Joint Tenancy" which purported to sever the joint tenancies he held with Elvira in all personal property and two separate tracts of land which are located in Red Willow County, Nebraska, and Hitchcock County, Nebraska. One of the notices was filed with the county clerk's office in Red Willow County, and the other notice was filed with the county clerk's office in Hitchcock County.

In December 2003, while Lloyd and Elvira's divorce proceeding was still pending, Lloyd died and the dissolution action was dismissed. Although Lloyd's will is not contained in the record, the parties do not dispute that Lloyd died testate. In January 2004, Marianne filed a petition in the county court for Red Willow County to commence formal probate proceedings of Lloyd's estate. It appears from the record that Elvira requested the statutory allowances and exemptions set forth in Neb. Rev. Stat. §§ 30-2322 through 30-2325 (Reissue 1995 & Cum. Supp. 2006), but did not request an elective share of the augmented estate.

During the probate proceedings, a question arose as to whether the notices to sever joint tenancies executed by Lloyd were effective to sever the joint tenancies of property held by Lloyd and Elvira. The county court found that the notices were not effective and awarded Elvira, as the surviving joint tenant, all property held by her and Lloyd in joint tenancy. Marianne now appeals.

## ASSIGNMENT OF ERROR

Marianne assigns, restated, that the county court erred in finding that the "Notice[s] of Severance of Joint Tenancy," which Lloyd filed with the offices of the county clerks of Red Willow and Hitchcock Counties, were ineffective to sever the joint tenancies held by Lloyd and Elvira in the property described in those notices.

## STANDARD OF REVIEW

When a jurisdictional question does not involve a factual dispute, determination of the issue is a matter of law, which requires an appellate court to reach a conclusion independent from that of the trial court.[1]

Appeals of matters arising under the Nebraska Probate Code, Neb. Rev. Stat. §§ 30-2201 through 30-2902 (Reissue 1995 & Cum. Supp. 2002) are reviewed for errors appearing on the record.[2] When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[3]

## ANALYSIS

### WAS COUNTY COURT'S ORDER FINAL?

Before reaching the legal issues presented for review, we first address whether this court has jurisdiction. It is the power and duty of an appellate court to determine whether it has

---

[1] *In re Estate of Rose, ante* p. 490, 730 N.W.2d 391 (2007).

[2] *In re Estate of Lamplaugh*, 270 Neb. 941, 708 N.W.2d 645 (2006).

[3] *Id.*

jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties.[4] For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the tribunal from which the appeal is taken.[5]

In *In re Estate of Rose*, we recently considered whether a determination by a county court as to a family allowance and the inclusion of certain property in an augmented estate was a final order where the county court retained jurisdiction to determine the size of the augmented estate, which would serve as a basis for an award of a spouse's elective share. Of the three types of final orders,[6] the county court's order in *In re Estate of Rose* could only have been one that was made during a special proceeding and affected a substantial right. We determined that the court's order was made during a special proceeding, but that it did not affect a substantial right. We explained that although the court's determination as to the family allowance and inclusion of certain property in the augmented estate both decreased and increased the augmented estate, the size of the augmented estate had not yet been determined. We further explained that the rights affected in the county court's order could be considered in an appeal from which the augmented estate is finally established.

As in *In re Estate of Rose*, the order in the present case did not determine an action and prevent a judgment, nor was it made on summary application in an action after judgment was rendered. Accordingly, in order to be final and appealable, the order in this case must have affected a substantial right and been made during a special proceeding.[7] Our case law has established that a proceeding under the Nebraska Probate Code is a special proceeding.[8] We are, therefore, left to determine whether the order in this case affected a substantial right.

---

[4] *In re Estate of Rose, supra* note 1.

[5] *Id.*

[6] See Neb. Rev. Stat. § 25-1902 (Reissue 1995).

[7] See *id.*

[8] See *In re Estate of Rose, supra* note 1.

The record before this court does not reflect that Elvira has made a claim for an elective share. Thus, unlike *In re Estate of Rose*, the computation of the augmented estate is not the fundamental issue in this case. Rather, the fundamental issue before the county court was the computation of the probate estate.

We have observed that a substantial right is affected if the order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to an appellant prior to the order from which an appeal is taken.[9] We have further observed that a substantial right is not affected when that right can be effectively vindicated in an appeal from the final judgment.[10] In that regard, we held in *In re Estate of Rose* that because the ultimate issue had yet to be determined, the rights involved in the court's ruling could be effectively considered in an appeal from the final judgment in which the augmented estate is finally established.

That is not true in the present case. Here, the county court determined that Lloyd's notices of severance of joint tenancy were not effective and, therefore, upon Lloyd's death, the property, including Lloyd's prior interest in it, became Elvira's as the surviving joint tenant. This finding by the court resolved the separate issue of whether Lloyd's interest in the property was part of the probate estate, and following the county court's order, there was nothing left to be determined on that issue. Moreover, unlike *In re Estate of Rose*, the rights involved in this case cannot be effectively considered in an appeal from the final judgment in which the probate estate is finally established. It is not uncommon for the probate of an estate to remain open for years. If that were to be the case here, by the time the probate estate is finally settled, the property in question may have been disposed of or the value of the property may be substantially reduced. Accordingly, we determine that the court's ruling in this case does affect a substantial right and is, therefore, a final, appealable order.

---

[9] *Id.*

[10] *In re Estate of Rose, supra* note 1.

WERE NOTICES TO SEVER JOINT TENANCY EFFECTIVE?

██ Each tenant in a joint tenancy owns the whole of the property from the time at which the interest is created.[11] Property owned in a joint tenancy passes by reason of the nature of the title to the surviving joint tenant upon the death of the other and does not pass by virtue of the provisions of the will of the first joint tenant to die.[12]

██ We have explained that an existing estate in joint tenancy can be destroyed by an act of one joint tenant which is inconsistent with joint tenancy and that such act has the effect of destroying the right of survivorship incidental to it.[13] At common law, a joint tenancy must contain the four unities of time, title, interest, and possession.[14] Thus, any act of a joint tenant which destroys one or more of its coexisting unities operates as a severance and extinguishes the right of survivorship.[15] In Nebraska, the common law requirement of the four unities persists subject to its modification by Neb. Rev. Stat. § 76-118 (Reissue 2003).[16]

Section 76-118 provides:

> (1) Any person or persons owning property which he, she, or they have power to convey, may effectively convey such property *by a conveyance naming himself, herself, or themselves and another person or persons, as grantees*, and the conveyance has the same effect as to whether it creates a joint tenancy, or tenancy in common, or tenancy in partnership, as if it were a conveyance from a stranger who owned the property to the persons named as grantees in the conveyance. (2) Any two or more persons owning

---

[11] See *In re Estate of Rosso*, 270 Neb. 323, 701 N.W.2d 355 (2005).

[12] *Id.*

[13] See, *id.*; *Krause v. Crossley*, 202 Neb. 806, 277 N.W.2d 242 (1979).

[14] See, *Krause v. Crossley, supra* note 13; *Giles v. Sheridan*, 179 Neb. 257, 137 N.W.2d 828 (1965).

[15] *In re Estate of Rosso, supra* note 11; *Giles v. Sheridan, supra* note 14.

[16] See, e.g., *In re Estate of Rosso, supra* note 11; *White v. Ogier*, 175 Neb. 883, 125 N.W.2d 68 (1963).

property which they have power to convey, may effectively convey such property *by a conveyance naming one, or more than one, or all such persons, as grantees,* and the conveyance has the same effect, as to whether it creates a separate ownership, or a joint tenancy, or tenancy in common, or tenancy in partnership, as if it were a conveyance from a stranger who owned the property, to the persons named as grantees in the conveyance. (3) Any person mentioned in this section may be a married person, and any persons so mentioned may be persons married to each other. (4) The *conveyance of all of the interest of one joint tenant to himself or herself as grantee,* in which the intention to effect a severance of the joint tenancy expressly appears in the instrument, severs the joint tenancy.

(Emphasis supplied.)

Marianne contends that Lloyd's execution of the notices of severance severed Lloyd's joint tenancies with Elvira. While courts vary on their opinion of whether certain actions taken by a joint tenant or tenants sever a joint tenancy, court decisions reveal, as was summarized in Powell on Real Property,[17] that in order to be effective, "[t]he act [of severance] must clearly and unequivocally signify an intent to sever. Nonetheless, mere expression of intent to sever without a legally sufficient act does not effectuate a severance."

For example, most courts agree that a joint tenancy may be severed when title to the property is changed. Such a change may result from a conveyance of a joint tenant's or tenants' full interest to a third party or directly to himself, herself, or themselves as grantee or grantees, or in some jurisdictions, the conveyance of a lesser interest, such as a life estate or lease. Courts, including ours, also agree that a joint tenancy may be severed by a final judgment or decree of partition. Other acts found in some, but not all, jurisdictions to effectuate a severance of a joint tenancy include the mutual agreement of the joint tenants; the lease of a joint tenant's interest; the filing of a bankruptcy petition by a joint tenant or the sale of a joint tenant's interest

---

[17] 7 Richard R. Powell & Michael Allan Wolf, Powell on Real Property § 51.04[1] at 51-16 (2001).

in bankruptcy; divorce; the mortgage of a joint tenant's interest, particularly in those states where a mortgage or a deed of trust transfers title to the mortgagee or trustee, i.e., title-theory jurisdictions; and actions by a joint tenant or tenants which changes the nature of the property held in joint tenancy.[18]

As to the question now before us, whether the execution of a unilateral written notice of severance is effective to sever a joint tenancy, there is a notable lack of discussion by both courts and commentators. Most predominately, authority addressing the question of whether joint tenancy may be severed by a written declaration comes from California, which has a statutory provision allowing the severance of a joint tenancy by less than all the joint tenants by the recordation and execution of a written declaration.[19] Aside from cases from California, the only other case law we were able to locate addressing a situation similar to that presented here comes from Pennsylvania. Although these cases are not directly on point, they do provide guidance.

In *Kern v. Finnegan et al.*,[20] and in *Stop 35, Inc. v. Haines*,[21] the Superior Court of Pennsylvania addressed whether agreements between husbands and their wives severed the spouses' tenancies by the entireties. In *Kern*, the court held that the agreement did not. The *Kern* court explained that no authority had been cited to the court and that the court was not able to find any to support a conclusion that the written declaration in that case could convert a tenancy by the entireties to a tenancy in common with the same force and legal effect as a deed executed and recorded by the parties. In *Stop 35, Inc.*, the husband and his estranged wife recorded an agreement which provided that the net proceeds of real estate held by tenancy by the entireties would be divided equally if the property were sold. In finding

---

[18] See, 48A C.J.S. *Joint Tenancy* § 19 (2004); 7 Powell & Wolf, *supra* note 17; William B. Stoebuck & Dale A. Whitman, The Law of Property § 5.4 (3d ed. 2000) (collecting cases).

[19] See Cal. Civ. Code § 683.2 (West 2007). See, e.g., *In re Estate of Powell*, 83 Cal. App. 4th 1434, 100 Cal. Rptr. 2d 501 (2000).

[20] *Kern v. Finnegan et al.*, 192 Pa. Super. 611, 162 A.2d 93 (1960).

[21] *Stop 35, Inc. v. Haines*, 374 Pa. Super. 604, 543 A.2d 1133 (1988).

that the agreement in that case did not sever the tenancy by the entireties, the court stated, "'It is obvious that the effect on the title to this property by the recording of this Agreement would be chaotic. Certainly, grantor and grantee cannot merely by their own declaration effectuate the recording of a Deed affecting title to property.'"[22]

Here, Lloyd's intent to sever his joint tenancies with Elvira is clear. Nevertheless, we must conclude that the execution of the notices in this case was not a legally sufficient act to sever Lloyd and Elvira's joint tenancies. Section 76-118 authorizes the severance of a joint tenancy by way of a conveyance of the property. The notices in question here did not convey the property held in joint tenancy and, therefore, did not sever the joint tenancy under § 76-118. That leaves us with the question of whether any of the four unities of time, title, interest, or possession were destroyed by the notices of severance. In *In re Estate of Rosso*,[23] we addressed the question of whether the disposal and failure to replace stock certificates purportedly held in joint tenancy were actions inconsistent with the joint tenancy that extinguished the right of survivorship. We noted that the disposal of the stock certificates would do nothing to alter any aspect of the stock's ownership because the certificate was merely a token of ownership, and there was no evidence to suggest that they were destroyed in an attempt to affect actual ownership of the corporation. Because the certificates did not affect the actual ownership of the stock, we concluded in *In re Estate of Rosso* that the unities of joint tenancy had not been affected. As in *In re Estate of Rosso*, the notices in this case did not affect actual ownership of the property and, therefore, did not affect the unities of joint tenancy. Accordingly, we must conclude that the joint tenancies Lloyd held with Elvira were not severed.

## CONCLUSION
For the reasons discussed above, we affirm.

AFFIRMED.

---

[22] *Id.* at 609, 543 A.2d at 1136.

[23] *In re Estate of Rosso, supra* note 11.