Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/17/2021 08:09 AM CST

In re Estate of Armengol
Beltran, deceased.
Mario Beltran, appellant, v. Marina
Beltran-Barrett, appellee.

___ N.W.2d ___

Filed September 24, 2021.    No. S-20-691.

1. **Jurisdiction: Appeal and Error.** A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law.

2. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusions.

3. **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court to acquire jurisdiction of an appeal, there must be a final judgment or final order entered by the tribunal from which the appeal is taken.

4. **Decedents' Estates: Final Orders: Appeal and Error.** In probate proceedings, an appellate court applies the rubric of Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2020) to determine whether an order is final. The relevant questions are whether the order was made during a special proceeding and affected a substantial right.

5. **Decedents' Estates: Appeal and Error.** Appellate courts have held that a proceeding under the Nebraska Probate Code is a special proceeding.

6. **Final Orders: Words and Phrases.** A substantial right is an essential legal right, not a mere technical right.

7. **Final Orders: Appeal and Error.** A substantial right is affected if an order affects the subject matter of the litigation, such as by diminishing a claim or defense that was available to an appellant before the order from which an appeal is taken.

8. **Final Orders.** It is not enough that the right itself be substantial; the effect of the order on that right must also be substantial.

9. \_\_\_\_. Substantial rights under Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2020) include those legal rights that a party is entitled to enforce or defend.

10. **Final Orders: Appeal and Error.** A substantial right under Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2020) is not affected when that right can be effectively vindicated in an appeal from the final judgment.

11. **Pretrial Procedure: Final Orders: Appeal and Error.** Discovery orders are not generally subject to interlocutory appeals because the underlying litigation is ongoing and the discovery order is not considered final. However, if the discovery order affects a substantial right and was made in a special proceeding, it is appealable.

12. **Decedents' Estates: Final Orders.** A consideration regarding the finality of orders in probate cases is whether the order ended a discrete—that is, separate and distinct—phase of the proceedings.

Appeal from the County Court for Lancaster County: Holly J. Parsley, Judge. Appeal dismissed.

J.L. Spray and Andrew R. Spader, of Mattson Ricketts Law Firm, for appellant.

Karin L. Walton, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.

## INTRODUCTION

In this probate case, Mario Beltran's "Verified Petition for Instruction" referencing Neb. Rev. Stat. § 30-402 (Reissue 2016) was denied. He appeals. The issues on appeal are, first, whether the order denying the petition was final and appealable and if so, second, whether the probate court erred in denying Mario's petition. We dismiss Mario's appeal for the lack of a final, appealable order.

## BACKGROUND

Armengol Beltran was married to Rosa Beltran. The couple had three children: Mario, Marina Beltran-Barrett (Marina),

and Madeline Beltran. Rosa died in 2004, and Armengol died in November 2016.

A probate estate was opened following Armengol's death. The record indicates that this probate has been contentious, with Mario and Armengol's longtime girlfriend on one side and Marina and her husband, Bruce Barrett (Bruce), on the other. Madeline lives in California and nominally supports Mario's positions in this litigation.

Marina was listed either as a joint account holder or as a payable on death payee for many of Armengol's financial accounts. In addition, Rosa and Armengol had loaned Marina and Bruce money on several occasions. Mario believes that Marina transferred money from Armengol's accounts and that she and Bruce failed to pay back loans owed to Rosa and Armengol.

In an attempt to further investigate his allegations, in January 2019, Mario served Bruce with a deposition duces tecum requesting that Bruce produce his tax returns since 1980. Bruce appeared for the deposition, but he declined to produce the requested tax returns. Mario filed a motion to compel Bruce to provide those documents, which motion was denied on June 21.

Mario then filed a "Verified Petition for Instruction," arguing that "it is impossible to determine the liabilities and inventory of the estate" without an order of the court "directing the personal representative to investigate the claims set forth [in Mario's petition] and requiring Marina . . . to appear before the court pursuant to . . . § 30-402 . . . and account for her actions in the assets of the estate and the estate of [Rosa]." Section 30-402 provides in relevant part:

> If a personal representative, heir, devisee, creditor, or other person interested in the estate of any deceased person or a conservator or guardian for a ward complains to the judge of the county court, upon an application under oath given on information and belief, that . . . any person may have concealed, embezzled, carried away,

or disposed of any money or personal property of the deceased or the ward . . . or . . . such person may have information or knowledge withheld by the respondent from the personal representative, conservator, or guardian and needed by the personal representative, conservator, or guardian for the recovery of any property by suit or otherwise, the judge may cite such person to appear before the court of probate. Any personal representative, heir, devisee, creditor, conservator, guardian, or other person interested in the estate of such deceased person or the ward may examine such person under oath upon the matter of such complaint or direct interrogatories to him or her.

A hearing was held on Mario's petition. The only witness called at that hearing was the personal representative of the estate. The probate court denied Mario's petition, noting that it

neither conforms to the type of request that can be granted pursuant to Neb. Rev. Stat. § 30-402 nor the procedure set forth [pursuant to either § 30-402 or Neb. Rev. Stat. § 30-2465 (Reissue 2016)]. . . .

. . . .

. . . The court does not reach the substance of the allegations made in the . . . [p]etition . . . because the allegations are not properly before the court for its consideration.

The probate court reasoned that Mario could not invoke the jurisdiction of the court under Neb. Rev. Stat. § 30-2465 (Reissue 2016), because he was not the personal representative, and that under § 30-402, the personal representative was not the person Mario had sought to have cited. Finally, the probate court noted that Mario made no request to terminate the appointment of the personal representative as allowed under Neb. Rev. Stat. § 30-2454 (Reissue 2016).

Mario appealed. Upon routine jurisdictional review, the Nebraska Court of Appeals ordered the parties to brief the issue of whether the probate court's order was final and appealable. We subsequently moved the case to our docket.

## ASSIGNMENTS OF ERROR

Mario assigns that the county court erred in (1) holding that he did not comply with the procedural requirements of § 30-402, (2) holding that he could not petition the court to instruct the personal representative, (3) failing to "cite and examine Marina . . . under . . . § 30-402," (4) failing to provide instructions to the personal representative, and (5) denying his motion to compel Bruce to produce documents pursuant to a subpoena duces tecum.

## STANDARD OF REVIEW

[1,2] A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law.[1] When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusions.[2]

## ANALYSIS

[3] We turn first to the jurisdictional question presented by this appeal. Under Neb. Rev. Stat. § 25-1911 (Reissue 2016), for an appellate court to acquire jurisdiction of an appeal, there must be a final judgment or final order entered by the tribunal from which the appeal is taken.[3] Our record shows that the county court has not entered a final judgment in this case. Thus, our jurisdiction depends on whether Mario has appealed from a final order.

[4,5] In probate proceedings, we apply the rubric of Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2020) to determine whether an order is final.[4] As applied to this case, the relevant questions raised by § 25-1902 are whether the order denying Mario's petition for instruction was "made during a special

---

[1] *State v. A.D.*, 305 Neb. 154, 939 N.W.2d 484 (2020).

[2] *Becher v. Becher*, 299 Neb. 206, 908 N.W.2d 12 (2018).

[3] *In re Interest of A.A. et al.*, 307 Neb. 817, 951 N.W.2d 144 (2020). See, also, Neb. Rev. Stat. § 30-1601 (Cum. Supp. 2020).

[4] See *In re Estate of Gsantner*, 288 Neb. 222, 846 N.W.2d 646 (2014).

proceeding" and "affect[ed] a substantial right." We have repeatedly said that a proceeding under the Nebraska Probate Code is a special proceeding.[5] As such, if the order Mario appeals from affects a substantial right, the order is final; if not, it is not final.

[6-10] A substantial right is an essential legal right, not a mere technical right.[6] A substantial right is affected if an order affects the subject matter of the litigation, such as by diminishing a claim or defense that was available to an appellant before the order from which an appeal is taken.[7] It is not enough that the right itself be substantial; the effect of the order on that right must also be substantial.[8] Substantial rights under § 25-1902 include those legal rights that a party is entitled to enforce or defend.[9] A substantial right under § 25-1902 is not affected when that right can be effectively vindicated in an appeal from the final judgment.[10]

[11] Marina argues that the order Mario appeals from is not final because it is an order denying discovery. We have held that discovery orders are not generally subject to interlocutory appeals because the underlying litigation is ongoing and the discovery order is not considered final.[11] However, we have also noted that if the discovery order affects a substantial right and was made in a special proceeding, it is appealable.[12]

As was the case in *Furstenfeld v. Pepin*,[13] the probate court's order here does not cite to a specific provision of the

---

[5] See, e.g., *id.*; *In re Estate of McKillip*, 284 Neb. 367, 820 N.W.2d 868 (2012); *In re Estate of Potthoff*, 273 Neb. 828, 733 N.W.2d 860 (2007).

[6] *In re Estate of Abbott-Ochsner*, 299 Neb. 596, 910 N.W.2d 504 (2018).

[7] *In re Estate of Larson*, 308 Neb. 240, 953 N.W.2d 535 (2021).

[8] *In re Estate of Abbott-Ochsner, supra* note 6.

[9] *In re Estate of Larson, supra* note 7.

[10] *In re Estate of Abbott-Ochsner, supra* note 6.

[11] *Furstenfeld v. Pepin*, 287 Neb. 12, 840 N.W.2d 862 (2013).

[12] *Id*.

[13] *Id.*

Nebraska Court Rules of Discovery in Civil Cases. But the predecessor statute to the one relied upon by Mario, § 30-402, has been analogized to a discovery statute. We held in *In re Estate of Bloedorn*[14] that the predecessor statute did not provide power to the lower court to seize or make any order disposing of the property at issue, but, rather, the purpose of the statute was purely in the nature of discovery.

And when the predecessor statute was removed from the Nebraska Probate Code, the Legislature acted—on the recommendation of judges and lawyers—to reinstate it. At that time, the legislative history stated that the language was intended "to provide the discovery procedure for property of a decedent when there has been thought to have property that [the personal representative] didn't go after."[15]

[12] In addition to this authority, we have decided several cases involving finality in probate orders. In doing so, we have generally noted that a consideration regarding finality is whether the order ended a discrete—that is, separate and distinct—phase of the proceedings.

In *In re Estate of Rose*,[16] a surviving spouse elected to take her elective share of 50 percent of the augmented estate and requested a family allowance. The probate court included certain property in the augmented estate and ordered the personal representative to pay a monthly family allowance, but the court did not make a final determination of the augmented estate.

We held that the probate court's treatment of items relevant to the calculation of the augmented estate could be effectively considered on an appeal from the final establishment of the augmented estate, and we noted that the determinations made by the court were "preliminary to a complete determination of the size of the augmented estate which was the fundamental

---

[14] *In re Estate of Bloedorn*, 135 Neb. 261, 280 N.W. 908 (1938).

[15] Floor Debate, L.B. 650, Judiciary Committee, 85th Leg., 2d Sess. 8643 (April 7, 1978).

[16] *In re Estate of Rose*, 273 Neb. 490, 730 N.W.2d 391 (2007).

issue before the county court."[17] As such, the order appealed from was not final.

We decided a case with similar facts a few months after *In re Estate of Rose*. In *In Re Estate of Potthoff*,[18] the decedent and his wife had been involved in divorce proceedings at the time of the decedent's death. Just prior to the death, the decedent had executed "'Notice[s] of Severance of Joint Tenancy'" with respect to real and personal property he held with his wife.[19] A question arose as to whether the severance of the joint tenancies was effective. The court found the notices were not effective and awarded the wife all of the property as the sole surviving joint tenant. The decedent's daughter appealed.

We distinguished these facts from *In re Estate of Rose* and found the court's order to be final. We reasoned that the finding that the property belonged to the wife as the surviving joint tenant

> resolved the separate issue of whether [the decedent's] interest in the property was part of the probate estate, and following the county court's order, there was nothing left to be determined on that issue. Moreover, unlike *In re Estate of Rose*, the rights involved in this case cannot be effectively considered in an appeal from the final judgment in which the probate estate is finally established. It is not uncommon for the probate of an estate to remain open for years. If that were to be the case here, by the time the probate estate is finally settled, the property in question may have been disposed of or the value of the property may be substantially reduced.[20]

In 2012, we decided *In re Estate of McKillip*[21] and held that an order to sell land that was part of an estate was final.

[17] *Id.* at 495, 730 N.W.2d at 395.

[18] *In re Estate of Potthoff, supra* note 5.

[19] *Id.* at 829, 733 N.W.2d at 863.

[20] *Id.* at 832, 733 N.W.2d at 865.

[21] *In re Estate of McKillip, supra* note 5.

There, sisters were left parcels of land in equal shares. One sister sought partition. The probate court granted partition and ordered the referee to sell the land. The personal representative appealed, and we reversed:

> The county court's order directing the referee to sell the property would affect the right of the devisees to receive the real estate in kind and would force them to sell their interests in the land. The distribution of the real estate is a discrete phase of the probate proceedings and would finally resolve the issues in that phase of the probate of the estate. . . .
>
> While it may have been possible for the parties to appeal after a sale and confirmation, judicial economy, if nothing else, requires resolution of this issue before a sale is held. To delay review of the order of sale until after the sale and its confirmation would be a waste of judicial resources and would significantly delay completion of the probate of the estate.[22]

More recently, we decided *In re Estate of Larson*,[23] in which the decedent's son objected to the final accounting of his father's estate filed by the personal representative. The probate court overruled the objections, but did not approve the final accounting. The son appealed. We concluded that the discrete phase of the estate—in this case the final accounting—had not been completed and that thus, the order that was being appealed from was not final.

As Marina contends, the order here is akin to one for discovery. Case law and legislative history for the predecessor statute to § 30-402 note that the purpose behind the statute was in the nature of discovery. And, unless discovery orders otherwise affect a substantial right—as well as occur in a special proceeding, as we have here—such orders are generally not final. This order is no exception.

[22] *Id.* at 374, 820 N.W.2d at 876.

[23] *In re Estate of Larson, supra* note 7.

The probate court's order, as one effectively denying discovery, did not end a discrete phase of the probate proceedings. Rather, the order simply denied Mario's attempt to determine the assets of the estate. But this order was interlocutory in that the personal representative continues to determine what assets should be included in the estate and will eventually present an inventory of those assets to the probate court. Moreover, unlike most of the cases discussed above, Mario's dispute involves money and not specific real or personal property; thus, this dispute can be determined at a later date without risk to the property.

That Mario purportedly requested the court to instruct the personal representative under a statute not alleged in his petition does not affect our conclusion that the probate court's order was not final. To the extent that Mario could even request such relief, that denial was also interlocutory for the same reasons.

This opinion should not be read to hold that an order denying an application under § 30-402 could never be immediately final and appealable. Still, we decline to speculate what circumstances might lead to such a final order. Nor do we read the probate court's order as forestalling another attempt by Mario to seek relief under § 30-402.

But in this case, no substantial right of Mario's is affected by the probate court's order. For that reason, we lack a final, appealable order.

## CONCLUSION

The probate court's order denying Mario's petition for instruction did not affect Mario's substantial rights and was therefore not final. Accordingly, this court lacks appellate jurisdiction and we dismiss Mario's appeal.

APPEAL DISMISSED.