Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/16/2022 08:05 AM CST

Schreiber Brothers Hog Company, LLC,
a Nebraska limited liability company,
and Steven Schreiber, an individual
member, appellees, v. Jerald
Schreiber, an individual
member, appellant.

___ N.W.2d___

Filed October 28, 2022.    No. S-21-570.

1. **Jurisdiction: Appeal and Error.** A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law.

2. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusions.

3. **Jurisdiction: Appeal and Error.** Appellate courts have an independent obligation to ensure they have appellate jurisdiction.

4. **Actions.** A special proceeding includes every special statutory remedy that is not itself an action.

5. **Actions: Words and Phrases.** An action is any proceeding in a court by which a party prosecutes another for enforcement, protection, or determination of a right or the redress or prevention of a wrong involving and requiring the pleadings, process, and procedure provided by statute and ending in a judgment.

6. **Final Orders: Words and Phrases.** A substantial right is an essential legal right, not a mere technical right.

7. **Final Orders: Appeal and Error.** A substantial right is affected if an order affects the subject matter of the litigation, such as by diminishing a claim or defense that was available to an appellant before the order from which an appeal is taken.

8. **Final Orders.** It is not enough that the right itself be substantial; the effect of the order on that right must also be substantial.

 9. **Final Orders: Appeal and Error.** A substantial right is not affected when that right can be effectively vindicated in an appeal from the final judgment.
10. **Restitution: Unjust Enrichment.** To recover under a theory of unjust enrichment, the plaintiff must allege facts that the law of restitution would recognize as unjust enrichment.
11. **Contracts: Unjust Enrichment.** One who is free from fault cannot be held to be unjustly enriched merely because one has chosen to exercise a contractual or legal right.
12. ____: ____. The doctrine of unjust enrichment is recognized only in the absence of an agreement between the parties.

Appeal from the District Court for Platte County: ROBERT R. STEINKE, Judge. Appeal dismissed in part, and in part reversed and remanded with directions.

David A. Domina, of Domina Law Group, P.C., L.L.O., for appellant.

Jonathan M. Brown, of Walentine O'Toole, L.L.P., for appellees.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

PAPIK, J.

After Steven Schreiber filed a complaint asking for the dissolution of the limited liability company he owned in equal shares with his brother, Jerald Schreiber, the district court ordered dissolution and directed a receiver to liquidate the company's assets. Those assets included two buildings owned by the company but located on land owned by Jerald. Jerald made the only offer to purchase the buildings, but Steven contended that if the buildings were sold to Jerald at the price offered, Jerald would be unjustly enriched. The parties later agreed that the district court should order the receiver to accept Jerald's offer, but that Steven and the company should be allowed to continue to pursue a claim of unjust enrichment. Following a trial, the district court found that Jerald

was unjustly enriched and ordered him to pay an additional $400,184 to the company. The district court also denied a motion filed by Jerald asking the district court to provide further directions to the receiver.

In Jerald's appeal of these rulings, we find that we lack jurisdiction to review the order denying the motion for further directions but that the district court erred in its unjust enrichment finding. We therefore dismiss in part, and in part reverse and remand with directions.

## I. BACKGROUND

### 1. Dissolution Action Filed; Receiver Appointed

Jerald and Steven formed the Schreiber Brothers Hog Company, LLC, in 2011. They each owned a 50-percent interest in the company and managed it together for a number of years.

This case began when Steven commenced an action in the district court on behalf of the company and himself seeking the judicial dissolution of the company pursuant to Neb. Rev. Stat. § 21-147(a)(5) (Cum. Supp. 2021). Jerald eventually agreed that the company should be dissolved and that a receiver should be appointed to wind up the company's affairs. The district court subsequently ordered dissolution and appointed a receiver to wind up the company's activities.

### 2. Complaint Amended to Raise Claims Regarding Hog Buildings

After the receiver had begun his work and liquidated most of the company's assets, Steven and the company obtained leave to file an amended complaint. The amended complaint added several additional claims for relief, all of which pertained to two buildings used in the company's hog production business which the receiver had not yet sold. The two buildings are referred to by the parties as a "finishing building" and a "nursery." All agree that these buildings were owned by the company, but located on land owned only by Jerald.

In the amended complaint, Steven and the company requested that the district court quiet title to the real property upon which the buildings were located in the company's name on the basis of adverse possession. Alternatively, they requested that the district court grant the company a prescriptive easement or easement by necessity to allow it and any successors in interest or grantees to enter the real property upon which the buildings were located as the company had during its operation. As a final alternative, Steven and the company alleged that if they did not obtain any of the previously described relief, the company was entitled to a judgment for unjust enrichment against Jerald in the amount of the fair market value of the property. The amended complaint alleged that an appraisal obtained by the receiver estimated the market value of the buildings to be $450,000.

After conducting some discovery, Steven and the company voluntarily dismissed their claims for adverse possession, prescriptive easement, and easement by necessity.

### 3. Hearing on Disposition of Hog Buildings

Before adjudicating the remaining claim of unjust enrichment, the district court held a hearing regarding what action the receiver should take as to the buildings. Prior to the hearing, counsel for Steven and the company argued that the district court should either enter an order declaring the buildings the "de facto assets of Jerald" and ordering him to pay for their reasonable value or order that the buildings be dismantled. Counsel for Jerald argued that the buildings should be sold to the highest bidder.

The district court received evidence at the hearing, including testimony from Steven, Jerald, and the receiver. The evidence established that when the buildings were constructed in 1994 and 1997, the company was not yet formed, and that Jerald and Steven were working together as part of a general partnership. Jerald testified that at the time the buildings were built on his

property, Steven knew that the buildings were being built on land that Jerald owned.

After the formation of the company, the buildings came to be owned by the company, but Jerald continued to own the real property where they were located. The receiver testified that he attempted to sell the buildings along with the rest of the company's assets, but that many parties who made initial inquiries about purchasing the buildings lost interest upon learning that the land upon which the buildings were located was not for sale and that there was no legal right of ingress and egress to access the buildings. The receiver testified that Jerald made the only offer to purchase the buildings and that he offered to purchase them for their assessed value, which was $18,000. Jerald confirmed that he was willing to purchase the buildings for $18,000. He also acknowledged that he was not willing to grant an easement to allow a buyer of the buildings to access them. He testified that he would not want to have "someone else going in and out of there any time of the day or night on their own accord."

An appraiser hired by the receiver also testified. The appraiser testified that in his opinion, the buildings were worth $450,000. He testified that he formed this opinion by calculating the difference between the value of the land together with the buildings and the value of the land without the buildings. The district court also received evidence about whether or not the buildings were operational. On this point, there was some disagreement by the witnesses. The receiver described the buildings as operational, but Jerald and his son testified the buildings were in a state of significant disrepair from nonuse, termination of utilities, frost and thaw cycles, and condensation damage.

At the conclusion of the hearing, the parties agreed that they would submit written briefs to the district court and that the district court would take the matter under advisement. The district court also scheduled a trial on the remaining unjust enrichment claim asserted by Steven and the company.

### 4. Trial on Unjust Enrichment Claim

On the day the unjust enrichment claim was scheduled to be tried, the district court stated on the record that the parties had reached an agreement that the receiver should be directed to accept Jerald's offer to purchase the buildings for $18,000, "with the understanding that nothing with respect to that stipulation of the parties would be construed as a final determination on the [unjust enrichment claim,] which [Steven and the company] then would pursue." The district court later entered a written order to the same effect.

With respect to the district court's consideration of the unjust enrichment claim, the parties agreed that the district court could consider all evidence and testimony offered at the prior hearing regarding the disposition of the buildings. Jerald and Steven also provided additional limited testimony.

After taking the matter under advisement, the district court entered a written order finding that judgment should be entered in favor of the company and against Jerald on the unjust enrichment claim. The district court relied heavily upon an opinion of the Arkansas Court of Appeals, *Trickett v. Spann*, 2020 Ark. App. 552, 613 S.W.3d 773 (2020). We discuss this case in more detail in the analysis section below.

The district court also found that because the buildings could not be sold with a right to ingress and egress, they had value only to Jerald. It reasoned that if Jerald were allowed to obtain the property for only the price for which he offered to purchase them, the company would not receive "reasonable compensation" and Jerald would receive a "personal windfall to which he is not entitled."

On the issue of damages, the district court noted some of Jerald's evidence showing that the buildings would need repairs before they could be used, but concluded that the appraiser's opinion was the only credible evidence of valuation. The district court found that the reasonable value of the buildings was just over $418,000 and ordered Jerald to pay the difference between that amount and the $18,000 he previously

tendered to purchase the buildings. Because the buildings were owned by the company, the district court dismissed Steven's claim for unjust enrichment.

### 5. Motion for Further Directions

After the receiver was appointed, Jerald filed a motion pursuant to Neb. Rev. Stat. § 25-1087 (Reissue 2016) requesting that the district court enter an order providing further directions to the receiver. Among other things, Jerald requested that the district court order the receiver to pay certain bills Jerald claims were incurred by the company, both before and after the appointment of the receiver. The motion alleged that Jerald had requested that the receiver pay the bills and that the receiver had refused.

The district court held a hearing on the motion for further directions on the same day it held trial on the unjust enrichment claim. At the hearing, Jerald testified regarding several bills he contended were incurred by the company, but the receiver had refused to pay. The receiver also testified. When asked by Jerald's counsel about several of the bills for which Jerald sought court direction to pay, the receiver testified that he had not yet paid the bills, but he would consider paying them. With respect to other bills, he testified that he did not believe they were legitimate expenses of the company. In response to a question about whether a bill should be paid, the receiver stated that he had a "budget problem," which we understand to refer to the fact that the amount of the bills Jerald was asking the district court to direct the receiver to pay exceeded the funds held by the receiver.

In the same document in which the district court explained its unjust enrichment finding, it denied the relief requested in the motion for further directions without further explanation.

### 6. Appeal

Jerald filed an appeal within 30 days of the district court's order finding unjust enrichment and denying the motion for further directions. We moved the case to our docket.

## II. ASSIGNMENTS OF ERROR

Jerald assigns several errors on appeal, but they can be consolidated and restated as three: He contends that the district court erred (1) in its finding that the company was entitled to recover on its unjust enrichment claim, (2) in its calculation of the amount that Steven was unjustly enriched, and (3) in its denial of Jerald's motion for further directions regarding the payment of bills.

## III. STANDARD OF REVIEW

The parties disagree on the standard of review we should apply to Jerald's arguments concerning the unjust enrichment judgment. Steven and the company contend that our opinion in *City of Scottsbluff v. Waste Connections of Neb.*, 282 Neb. 848, 809 N.W.2d 725 (2011), holds that claims of unjust enrichment are actions at law and that thus, we should apply the standard of review we would normally apply in reviewing a bench trial of a law action, i.e., the court's factual findings are not disturbed unless clearly wrong, but questions of law are reviewed independently. Jerald, on the other hand, contends that because the unjust enrichment claims were raised in the context of an action to dissolve the company and actions to dissolve a limited liability company are actions in equity, we should apply the standard of review applicable to appeals from bench trials of equity actions, i.e., de novo on the record, with this court independently resolving both questions of law and questions of fact. See *Schmid v. Simmons*, 311 Neb. 48, 970 N.W.2d 735 (2022). We find that we need not resolve this dispute as to the standard of review. Jerald's unjust enrichment arguments primarily turn on issues of law, and even under the more deferential standard of review urged by Steven and the company, we find that the district court's unjust enrichment finding is erroneous.

[1,2] A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law. *In re Estate of Beltran*, 310 Neb. 174, 964 N.W.2d 714

(2021). When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusions. *Id.*

## IV. ANALYSIS

### 1. Appellate Jurisdiction

[3] While the issue of appellate jurisdiction was not initially raised by the parties, we have an independent obligation to ensure we have appellate jurisdiction. *State v. Reames*, 308 Neb. 361, 953 N.W.2d 807 (2021). With that duty in mind, we ordered the parties to submit supplemental briefing on the issue. We now consider that issue, first as to the denial of the motion for further directions and then as to the finding of unjust enrichment.

### (a) Motion for Further Directions

We begin our analysis of our jurisdiction to review the district court's denial of Jerald's motion for further directions with Neb. Rev. Stat. § 25-1090 (Reissue 2016). That statute provides that "[a]ll orders appointing receivers" and "giving them further directions" may be appealed. *Id.* Jerald takes the position that because the district court did not give further directions but denied his request to do so, this statute does not authorize our review. We agree. Jerald argues, however, that we have jurisdiction to review the district court's order because it qualifies as a final order under Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2020). We consider that issue next.

Section 25-1902 currently recognizes four categories of final orders. In our view, however, the order denying the motion for further directions could fit into only one such category: those orders "affecting a substantial right made during a special proceeding." § 25-1902(1)(b).

[4,5] A special proceeding occurs where the law confers a right and authorizes a special application to a court to enforce it. See *In re Grand Jury of Douglas Cty.*, 302 Neb. 128, 922 N.W.2d 226 (2019). A special proceeding includes every

special statutory remedy that is not itself an action. See *Kremer v. Rural Community Ins. Co.*, 280 Neb. 591, 788 N.W.2d 538 (2010). An action is any proceeding in a court by which a party prosecutes another for enforcement, protection, or determination of a right or the redress or prevention of a wrong involving and requiring the pleadings, process, and procedure provided by statute and ending in a judgment. *In re Grand Jury of Douglas Cty., supra*. Every other legal proceeding by which a remedy is sought by original application to a court is a special proceeding. *Id.*

Applying these rules, we find that once the district court granted dissolution and appointed a receiver, a special proceeding commenced. Neb. Rev. Stat. § 21-148(e) (Reissue 2012) authorizes the district court, on application of a member of a limited liability company (LLC), to "order judicial supervision of the winding up of a dissolved [LLC], including the appointment of a person to wind up the company's activities." Judicial supervision of the winding up an LLC is thus a remedy that may be sought by application to a court, but it is not an action. Treating judicial supervision of a receivership as a special proceeding is also consistent with our precedent. In *Sutton v. Killham*, 285 Neb. 1, 825 N.W.2d 188 (2013), we held that we could review a district court's determination that a receiver could deny a claim for payment of services as an action that affected a substantial right during a special proceeding.

[6-9] The fact that the order denying the motion for further directions was issued in a special proceeding does not, by itself, make the order appealable. The order must have also affected a substantial right. See § 25-1902(1)(b). A substantial right is an essential legal right, not a mere technical right. *In re Estate of Beltran*, 310 Neb. 174, 964 N.W.2d 714 (2021). A substantial right is affected if an order affects the subject matter of the litigation, such as by diminishing a claim or defense that was available to an appellant before the order from which an appeal is taken. *Id.* It is not enough that the right itself

be substantial; the effect of the order on that right must also be substantial. *Id.* A substantial right is not affected when that right can be effectively vindicated in an appeal from the final judgment. *In re Estate of Larson*, 308 Neb. 240, 953 N.W.2d 535 (2021).

We have approvingly cited a commentator who has suggested that in the context of multifaceted special proceedings that are designed to administer the affairs of a person, an order that ends a discrete phase of the proceedings affects a substantial right because it finally resolves the issues raised in that phase. See *id.*, citing John P. Lenich, *What's So Special About Special Proceedings? Making Sense of Nebraska's Final Order Statute*, 80 Neb. L. Rev. 239 (2001). We have employed that "discrete phase" rubric in a number of probate proceedings. See, *In re Estate of Severson*, 310 Neb. 982, 970 N.W.2d 94 (2022); *In re Estate of Beltran, supra*; *In re Estate of Larson, supra*; *In re Estate of McKillip*, 284 Neb. 367, 820 N.W.2d 868 (2012). We have also held that in probate cases, while an order ending a discrete phase of the proceeding is appealable, one that is merely preliminary to such an order is not. See *In re Estate of Larson, supra*.

Although the judicial supervision of the winding up of an LLC is not designed to administer the affairs of a person, it can be a multifaceted proceeding that is designed to administer the affairs of an LLC. Indeed, it bears substantial similarity to a probate proceeding: Probate is the legal process by which a deceased person's debts are paid and assets distributed; the judicial supervision of the winding up of an LLC is the legal process by which a dissolved LLC's debts are paid and assets distributed. See § 21-148(b). We also note that the Nebraska Court of Appeals has previously analyzed whether an order entered in a receivership proceeding affected a substantial right by applying the discrete phase analysis. See *Sutton v. Killham*, 22 Neb. App. 257, 854 N.W.2d 320 (2014). We find it appropriate to apply the discrete phase rubric to orders entered in the judicial supervision of the winding up of an LLC.

Applying that discrete phase rubric, we conclude that the order denying the motion for special directions did not end a discrete phase of the proceedings and thus did not affect a substantial right. In the motion for further directions, Jerald sought an order specifically directing the receiver to pay certain expenses. At the hearing on that motion, the receiver's testimony demonstrated that he had not made a final determination of the expenses that he would pay. Indeed, he testified that he would consider paying some of the expenses that were the subject of Jerald's motion but that a "budget problem" complicated that task.

Given the evidence adduced and the district court's order, contrary to the parties, we do not understand the district court's denial of the motion for further directions to be a final determination that the receiver need not pay the expenses at issue. Rather, we understand the district court merely to have determined that additional, specific direction was not necessary at that time. Because the district court's order denying Jerald's motion for further directions did not affect a substantial right of Jerald's, we find that we lack jurisdiction under § 25-1902. And because we can discern no other basis of appellate jurisdiction, we dismiss that portion of Jerald's appeal.

(b) Unjust Enrichment

We now consider whether we have appellate jurisdiction to review the district court's resolution of the unjust enrichment claims. We begin our analysis of that question by considering whether this case implicates Neb. Rev. Stat. § 25-1315 (Reissue 2016). Specifically, we consider whether the fact that the judicial supervision of the winding up of the company apparently remained ongoing at the time the appeal was filed precludes appellate review of the district court's resolution of the unjust enrichment claim under § 25-1315.

Section 25-1315(1) provides, in relevant part:

> When more than one claim for relief is presented in an action, . . . or when multiple parties are involved, the

court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties . . . .

As we have recently explained, § 25-1315(1) is implicated only when a case presents more than one claim for relief or involves multiple parties, and the court enters an order which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties. See *Mann v. Mann, ante* p. 275, 978 N.W.2d 606 (2022). For purposes of determining whether a case presents more than one "claim for relief" under § 25-1315(1), we have said the term is not synonymous with "issue" or "theory of recovery," but is instead the equivalent of a cause of action. *Mann v. Mann, supra.*

We find in this circumstance that § 25-1315(1) is not implicated. Although the parties have asserted more than one claim for relief during the course of this case, the order adjudicating the unjust enrichment claim did not adjudicate fewer than all the remaining claims in the case or leave claims asserted against certain parties for future resolution. Steven initially asserted a claim for judicial dissolution on behalf of the company, but that claim was resolved when the court ordered dissolution. Steven and the company also asserted claims for adverse possession, prescriptive easement, and easement by necessity, but those claims were involuntarily dismissed. At the time the district court decided the unjust enrichment claim, it was the only claim remaining in the case.

Because we find that § 25-1315(1) is not implicated, we have appellate jurisdiction to review the district court's order resolving the unjust enrichment claim if it satisfies § 25-1902. Cf. *Mann v. Mann, supra*. We find that the order is appealable

under § 25-1902, because it affects a substantial right in a special proceeding.

We have already explained our conclusion that the judicial supervision of the winding up of the company is a special proceeding. We also find that the order resolving the unjust enrichment claim was entered in that special proceeding. The claim of unjust enrichment arose once the judicial supervision of the winding up process began and Jerald was the only interested buyer for the buildings. The parties later agreed that the receiver should be directed to sell the buildings to Jerald at the price he offered to pay. The unjust enrichment claim was then litigated under the theory that the sale to Jerald at that price would result in his unjust enrichment. The district court's eventual order found unjust enrichment and effectively ordered Jerald to pay additional amounts for the buildings. The unjust enrichment claim was inextricably bound up within the judicial supervision of the winding up of the company. Under these circumstances, we find that the order resolving the unjust enrichment claim was entered in a special proceeding.

We recognize that a claim for unjust enrichment will, in the vast majority of cases, be litigated in an action. After all, it is usually a claim that one party prosecutes against another for the enforcement, protection, or determination of a right or for the redress or prevention of a wrong; is usually decided by way of pleadings, process, and procedure provided by statute; and usually ends in a judgment. See, e.g., *Bloedorn Lumber Co. v. Nielson*, 300 Neb. 722, 915 N.W.2d 786 (2018). Under these assuredly rare circumstances, however, we find that the unjust enrichment claim was entered in a special proceeding.

Having determined that the order resolving the unjust enrichment claim was entered in a special proceeding, we return to the discrete phase rubric discussed above. Here, we find that the order resolving the unjust enrichment claim ended a discrete phase of the proceeding. It ended the phase of the proceeding dedicated to resolving the claims of Steven and the

company that Jerald was unjustly enriched by his purchase of the buildings and should be required to pay more to the company. The district court held a trial on this issue and then entered an order determining that Jerald was unjustly enriched and ordering him to pay an additional $400,184 for the purchase of the buildings. In this respect, the order is much like the order we found appealable in *Sutton v. Killham*, 285 Neb. 1, 825 N.W.2d 188 (2013). In that case, we reviewed an order of summary judgment finding that a receiver correctly denied a claim for payment of services. We see no meaningful difference between the conclusive determination that a party in receivership had no liability for a debt in *Sutton v. Killham* and the district court's conclusive determination that a party in receivership was owed a debt here.

We also find similarity between this case and *In re Estate of McKillip*, 284 Neb. 367, 820 N.W.2d 868 (2012). We described that case as one in which a party sought partition of certain real property within a probate proceeding. See *id.* at 372, 820 N.W.2d at 874 ("we are presented with the partition of real property in an estate proceeding"). The testator left four tracts of land to his three daughters, one of whom sought partition of the property. The county court found that partition of the property should be made and appointed a referee. The referee concluded that the real property should be partitioned by sale; however, one of the daughters opposed the partition by sale. Ultimately, the court ordered partition by sale, and the daughter appealed. Before we reached the merits of the case, we considered whether or not we had appellate jurisdiction. We concluded that the circumstances qualified as an order that affected a substantial right. We reasoned:

> The county court's order directing the referee to sell the property would affect the right of the devisees to receive the real estate in kind and would force them to sell their interests in the land. The distribution of the real estate is a discrete phase of the probate proceedings and would finally resolve the issues in that phase of the probate of

the estate. It could be months before an appeal from the order of confirmation would be finally resolved. In the interim, distribution of the assets of the estate would have to wait until that phase of the probate was finally resolved regarding distribution of the real estate. The sale of the real estate would diminish the right of the devisees to have the real estate distributed in kind.

*Id.* at 374, 820 N.W.2d at 876.

Similar reasoning applies in these circumstances. As in *In re Estate of McKillip*, the district court here fully resolved an issue presented within a multifaceted proceeding. And, like the situation in *In re Estate of McKillip*, delaying review of that finally resolved issue will complicate the resolution of the entire proceeding. Here, the question of whether the company's unjust enrichment recovery will stand obviously affects the resources the receiver will have available in completing the winding up of the company's affairs.

For these reasons, we find that the order of the district court awarding the company an unjust enrichment recovery from Jerald affected a substantial right during a special proceeding. We turn to the merits of that issue now.

## 2. Unjust Enrichment Merits

The district court concluded that Jerald was unjustly enriched at the company's expense when he purchased the buildings for $18,000. Unjust enrichment claims do not arise from an express or implied agreement between the parties; rather, they are imposed by law "when justice and equity require the defendant to disgorge a benefit that he or she has unjustifiably obtained at the plaintiff's expense." *Bloedorn Lumber Co. v. Nielson*, 300 Neb. 722, 729, 915 N.W.2d 786, 792 (2018) (internal quotation marks omitted).

Jerald attacks the district court's unjust enrichment judgment on a number of fronts. One such argument is that the district court erred by basing its unjust enrichment finding on the fact that the transfer of the buildings to Jerald for the price

he offered would result in his receiving a windfall and the company's not receiving reasonable compensation. According to Jerald, "financial disparity" in a transaction alone cannot establish unjust enrichment liability. Brief for appellant at 3.

Jerald is undoubtedly correct that an unjust enrichment recovery is not available solely because a court finds that one party to an exchange obtained a better deal, or even a much better deal, than another. Our cases and other authorities confirm that unjust enrichment, while a flexible remedy, is a narrower concept. This idea is helpfully summarized in the comments to the Restatement (Third) of Restitution and Unjust Enrichment:

> [T]he law of restitution is very far from imposing liability for every instance of what might plausibly be called unjust enrichment. The law's potential for intervention in transactions that might be challenged as inequitable is narrower, more predictable, and more objectively determined than the unconstrained implications of the words "unjust enrichment." . . .
>
> The concern of restitution is not, in fact, with unjust enrichment in any such broad sense, but with a narrower set of circumstances giving rise to what might more appropriately be called *unjustified enrichment*. Compared to the open-ended implications of the term "unjust enrichment," instances of unjustified enrichment are both predictable and objectively determined, because the justification in question is not moral but legal.

1 Restatement (Third) of Restitution and Unjust Enrichment § 1, comment *b*. at 5 (2011) (emphasis in original).

Consistent with these thoughts, we have emphasized that "'[t]he fact that a recipient has obtained a benefit without paying for it does not of itself establish that the recipient has been unjustly enriched,'" *Kalkowski v. Nebraska Nat. Trails Museum Found.*, 290 Neb. 798, 806, 862 N.W.2d 294, 301-02 (2015), quoting 1 Restatement (Third) of Restitution and Unjust Enrichment, *supra*, § 2(1), and that the doctrine

does not exist to rescue a party from the consequences of a bad bargain, *Washa v. Miller*, 249 Neb. 941, 546 N.W.2d 813 (1996). Or, as the Texas Supreme Court has articulated the same basic idea, "[u]njust enrichment is not a proper remedy merely because it might appear expedient or generally fair that some recompense be afforded for an unfortunate loss to the claimant, or because the benefits to the person sought to be charged amount to a windfall." *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 42 (Tex. 1992) (internal quotation marks omitted).

[10,11] Rather than a tool that a court can use to correct any transaction it might find unfair or unequal, the unjust enrichment remedy can be taken off the shelf in more limited situations. As we have held, to recover under a theory of unjust enrichment, the plaintiff must allege facts that the law of restitution would recognize as unjust enrichment. *City of Scottsbluff v. Waste Connections of Neb.*, 282 Neb. 848, 809 N.W.2d 725 (2011). We have explained that this rule does not mean that prior cases must have recognized a specific fact pattern as unjust enrichment in order for an unjust enrichment recovery to be available. It does mean, however, that an unjust enrichment plaintiff must demonstrate that under the circumstances, principles of the law of restitution would authorize a recovery. We have said that it is a "bedrock principle of restitution" that unjust enrichment occurs when there is a "transfer of a benefit without adequate legal ground" or a "transaction that the law treats as ineffective to work a conclusive alteration in ownership rights." *Id.* at 866, 809 N.W.2d at 743, quoting Restatement (Third) of Restitution and Unjust Enrichment, § 1, comment *b.* (internal quotation marks omitted). We have also said one who is free from fault cannot be held to be unjustly enriched merely because one has chosen to exercise a contractual or legal right. *Kissinger v. Genetic Eval. Ctr.*, 260 Neb. 431, 618 N.W.2d 429 (2000).

Given the foregoing, we find that the company was not entitled to an unjust enrichment recovery solely because the

district court found that the transfer of the buildings to Jerald at the price he offered was economically lopsided. Even assuming the result of the transfer was a much better deal for Jerald than the company, this alone does not demonstrate that the transfer occurred without an adequate legal ground or that it was ineffective to work a conclusive alteration in ownership rights of the buildings. And while the district court appears to have concluded that Jerald was able to benefit from the circumstances solely because he was not willing to grant an easement on his property for ingress to and egress from the buildings, we see no basis to find that Jerald was obligated to grant such an easement.

Aside from the bare economics of the transaction, Steven and the company argued and the district court found that an unjust enrichment recovery was warranted based on the reasoning of the Arkansas Court of Appeals in *Trickett v. Spann*, 2020 Ark. App. 552, 613 S.W.3d 773 (2020). Again, we disagree. In that case, plaintiffs, a husband and wife, paid for the construction of a house on real property owned by their daughter and her husband. Plaintiffs lived in the home for a time, but moved away after their daughter died. After plaintiffs had moved away and their daughter's husband refused to pay them for the home, they filed a lawsuit claiming unjust enrichment and prevailed in the trial court. The appellate court upheld the unjust enrichment recovery, but did so based on the theory that an unjust enrichment recovery was appropriate when a plaintiff provides improvements to a defendant's property, the circumstances were such that the plaintiff reasonably expected the defendant to pay for the value of the improvements, and the defendant was aware the plaintiff was providing the improvements with the expectation of being paid. The appellate court pointed to specific evidence in the record demonstrating that plaintiffs expected their daughter and her husband to pay for the home and that the daughter's husband accepted the home knowing that his in-laws expected to be paid.

While there is some surface similarity between this case and *Trickett v. Spann*, the unjust enrichment rationale applied there does not fit here. Unlike the plaintiffs in *Trickett v. Spann*, Steven and the company can point to no evidence in the record that the company constructed the buildings on Jerald's land with the expectation that Jerald would pay for them or that Jerald allowed the buildings to be built there knowing that the company expected to be paid. The company did not even exist when the buildings were constructed. At that time, Jerald and Steven were operating as a general partnership. And even if that fact can be set to the side, there is also nothing in the record that suggests that when the buildings were constructed, Steven expected Jerald to pay him for the buildings, or that Jerald allowed the construction of the buildings knowing that such payment was expected.

Not only do we find the district court's rationales for its unjust enrichment judgment unpersuasive, we find that its judgment is inconsistent with other principles of the law of unjust enrichment. First, an unjust enrichment recovery is generally unavailable when a party conferring a benefit has the opportunity to form a contract with the party receiving the benefit, but neglects the opportunity to do so. See 1 Restatement (Third) of Restitution and Unjust Enrichment, § 2, comment *d*. (2011). The rationale for this principle is that when voluntary transactions are feasible, it is preferable "to require the parties to make their own terms [rather] than for a court to try to fix them." *Indiana Lumbermens Mut Ins v. Reinsurance Results*, 513 F.3d 652, 657 (7th Cir. 2008). See, also, 1 Dan B. Dobbs, Dobbs Law of Remedies § 4.9(4) at 690 (2d ed. 1993) (providing that "[i]f the parties could have contracted but did not, the plaintiff generally is denied recovery of the non-cash benefit"). Here, the company appears to be claiming that it is entitled to an unjust enrichment recovery because Jerald and Steven, through their partnership, conferred a benefit on Jerald by constructing the buildings on his land many years ago. But, at that time, Steven knew the buildings

were being constructed on Jerald's land. As Steven's counsel conceded at oral argument, there was no evidence that Steven was deceived as to the buildings being built on Jerald's land; rather, he "went into this eyes wide open." Despite knowing where the buildings were being constructed, Steven did not insist on contractual terms, but, in the words of the U.S. Court of Appeals for the Seventh Circuit, is asking "a court to try to fix them." *Indiana Lumbermens Mut Ins v. Reinsurance Results*, 513 F.3d at 657.

[12] In addition, the doctrine of unjust enrichment is recognized only in the absence of an agreement between the parties. *Washa v. Miller*, 249 Neb. 941, 546 N.W.2d 813 (1996). Steven and the company claim, and the district court found, that Jerald was unjustly enriched by receiving the buildings for his offered price of $18,000 and that he should have to pay more. But this overlooks the fact that the parties *agreed* that the district court should order the receiver to sell the buildings to Jerald for that price. To this, Steven and the company will no doubt respond that both they and Jerald agreed that a sale should take place on those terms with the reservation that the sale would not preclude further pursuit of an unjust enrichment claim. While this reservation certainly permitted Steven and the company to pursue an unjust enrichment claim after the sale, it did not change the law of unjust enrichment that governed it. And in our view, despite the parties' agreement that an unjust enrichment claim could still be pursued, the company could not, consistent with unjust enrichment principles, agree to sell the buildings to Jerald for one price and also ask that the district court order him to pay more. Such an outcome results in Jerald's effectively purchasing the buildings for much more than he offered and agreed to pay.

Because we find that the district court erred in entering judgment for the company and against Jerald on the company's unjust enrichment claim, we reverse that judgment and remand the cause with directions to enter judgment in Jerald's favor.

Because we find that the unjust enrichment judgment was erroneous, we need not consider Jerald's contention that the district court erred in its calculation of the amount Steven was unjustly enriched. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Cain v. Lymber*, 306 Neb. 820, 947 N.W.2d 541 (2020).

## V. CONCLUSION

We find that we lack jurisdiction to review the district court's order denying Jerald's motion for further directions. We find that we have jurisdiction to review the district court's order finding that Jerald was unjustly enriched. On that issue, we find the district court erred and therefore reverse, and remand with directions to enter judgment in Jerald's favor.

APPEAL DISMISSED IN PART, AND IN
PART REVERSED AND REMANDED
WITH DIRECTIONS.