Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/13/2022 08:08 AM CDT

IN RE ESTATE OF RYAN SEVERSON, DECEASED.
DON FEIK, APPELLEE, V. DIANE KELLY, NOW KNOWN AS
DIANE SCHUBERT, PERSONAL REPRESENTATIVE OF
THE ESTATE OF RYAN SEVERSON, APPELLANT.

___ N.W.2d ___

Filed February 18, 2022.    No. S-21-321.

1. **Jurisdiction: Appeal and Error.** A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law.
2. **Statutes.** Statutory interpretation is a question of law.
3. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusions.
4. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the appeal.
5. **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court to acquire jurisdiction of an appeal, there must be a final judgment or final order entered by the tribunal from which the appeal is taken.
6. **Decedents' Estates: Final Orders: Appeal and Error.** In probate proceedings, an appellate court applies the rubric of Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2020) to determine whether an order is final. The relevant questions are whether the order was made during a special proceeding and affected a substantial right.
7. **Decedents' Estates.** A proceeding under the Nebraska Probate Code is a special proceeding.
8. **Final Orders: Words and Phrases.** A substantial right is an essential legal right, not a mere technical right.
9. **Final Orders: Appeal and Error.** A substantial right is affected if an order affects the subject matter of the litigation, such as by diminishing a claim or defense that was available to an appellant before the order from which an appeal is taken.

10. **Final Orders.** Substantial rights under Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2020) include those legal rights that a party is entitled to enforce or defend.

11. **Decedents' Estates: Final Orders.** A consideration regarding the finality of orders in probate cases is whether the order ended a discrete—that is, separate and distinct—phase of the proceedings.

12. **Decedents' Estates.** One who is not willing to serve as a personal representative cannot be compelled to accept such an appointment.

13. ____. Without acceptance by one appointed personal representative, there can be no qualification.

14. ____. The Nebraska Probate Code requires qualification of a personal representative before the issuance of letters.

15. **Courts: Judgments.** In the absence of an actual case or controversy requiring judicial resolution, it is not the function of the courts to render a judgment that is merely advisory.

16. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

17. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the County Court for Franklin County: Timothy E. Hoeft, Judge. Reversed and remanded for further proceedings.

Nicholas R. Norton and Elizabeth J. Klingelhoefer, of Jacobsen, Orr, Lindstrom & Holbrook, P.C., L.L.O., for appellant.

Daniel J. Thayer, of Thayer & Thayer, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## INTRODUCTION

Over 3 years after a decedent's death, an estate was opened for the purpose of serving a lawsuit against the decedent.

The probate court appointed the decedent's mother as personal representative, ordered that letters be issued to her, and issued such letters even though the mother had not accepted the appointment. Because the issuance of letters of personal representative was an unauthorized action without the appointee's qualification, we reverse, and remand for further proceedings.

## BACKGROUND

On March 1, 2021, Don Feik filed in the county court for Franklin County an application for informal appointment of a personal representative in intestacy. The application alleged that Ryan Severson died on March 26, 2017; that no personal representative had been appointed; and that Feik was unaware of any unrevoked testamentary instrument of Severson's relating to property in Nebraska. Feik alleged that as a creditor of Severson's estate, he was an interested person under the Nebraska Probate Code.[1] Feik nominated Severson's mother, Diane Kelly, now known as Diane Schubert (Kelly), as personal representative. He alleged that Kelly had priority for appointment and that there were no other persons having an equal or prior right to appointment. Feik further alleged that "[n]o bond is required because the Personal Representative will not come into possession of funds and this estate is established for the sole purpose of naming the Personal Representative of the estate as a Defendant in an auto collision case in Kearney County, Nebraska."

Kelly objected to the application for informal appointment of a personal representative and asked the court to dismiss it. She asserted that because more than 3 years had passed since Severson's death, an appointment proceeding could not be commenced under Neb. Rev. Stat. § 30-2408 (Reissue 2016). She alleged that the court generally lacked jurisdiction to hear such a claim.

---

[1] See Neb. Rev. Stat. § 30-2209(21) (Reissue 2016) (defining "interested person").

Following a hearing, the probate court entered a March 23, 2021, order on application for appointment of personal representative. According to the order, Feik filed the application "because of a claim that arose against the estate of . . . Severson for injuries that occurred from an automobile accident." The court stated that granting dismissal as requested by Kelly "would be contrary to its decision in the [Kearney County] civil case and would create an absurd result." The court therefore allowed informal probate to proceed and appointed Kelly as personal representative "for the purpose of receiving service of the civil action filed in Kearney County." The court waived requirements of the personal representative with regard to publication of notice to creditors and the filing of an inventory.

Also on March 23, 2021, the court signed and filed a statement of informal appointment of personal representative in intestacy. It recited that it appeared all requirements of the Nebraska Probate Code had been satisfied. The statement further detailed that Kelly was "informally appoint[ed] . . . as Personal Representative of [Severson's] estate in unsupervised administration, and Letters shall be issued to said Personal Representative to serve without bond." That same day, the court issued letters of personal representative to Kelly.

On April 22, 2021, Kelly appealed. We moved the case to our docket.[2]

ASSIGNMENTS OF ERROR

Kelly assigns, restated and reordered, that the probate court erred in (1) appointing her as personal representative of the estate in the absence of jurisdiction to make the appointment and when she objected to and did not accept the appointment, (2) allowing the application to proceed when it was filed outside of the 3-year statute of limitations and was not limited to the recovery of expenses of administration only, (3) allowing the application to proceed in the absence of any

---

[2] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2020).

allegations that the informal probate would be opened for purposes limited to recovering liability insurance, (4) finding that not allowing the application would be contrary to law and create an "absurd result," and (5) finding that the savings clause of Neb. Rev. Stat. § 25-201.01 (Reissue 2016) applied to an amended complaint in the Kearney County case when the plaintiffs in that case failed to properly commence an action within the applicable statute of limitations and when no "new action" was commenced.

## STANDARD OF REVIEW

[1,2] A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law.[3] Statutory interpretation is a question of law.[4]

[3] When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusions.[5]

## ANALYSIS

We begin by emphasizing that the Kearney County civil case is not before us in this appeal. At oral arguments, the parties seemed to agree that no aspect of the Kearney County case is final or appealable at this time. We consider only the appointment orders and letters of personal representative from the Franklin County probate case. Although some documents from the Kearney County case were judicially noticed during the March 22, 2021, Franklin County probate hearing but were not included in the Franklin County Court's bill of exceptions, those documents are unnecessary to the limited issues before us.[6]

---

[3] *In re Estate of Beltran, ante* p. 174, 964 N.W.2d 714 (2021).

[4] See *In re Estate of Giventer, ante* p. 39, 964 N.W.2d 234 (2021).

[5] *In re Estate of Beltran, supra* note 3.

[6] See *In re Estate of Radford*, 297 Neb. 748, 901 N.W.2d 261 (2017) (bill of exceptions is only vehicle for bringing evidence before appellate court; evidence which is not made part of bill of exceptions may not be considered).

Jurisdiction

[4,5] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the appeal.[7] For an appellate court to acquire jurisdiction of an appeal, there must be a final judgment or final order entered by the tribunal from which the appeal is taken.[8] Feik contends that the order appealed from is not a final order.

[6,7] In probate proceedings, an appellate court applies the rubric of Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2020) to determine whether an order is final. The relevant questions are whether the order was made during a special proceeding and affected a substantial right.[9] A proceeding under the Nebraska Probate Code is a special proceeding.[10]

[8-10] We turn our attention to whether the order affected a substantial right. A substantial right is an essential legal right, not a mere technical right.[11] A substantial right is affected if an order affects the subject matter of the litigation, such as by diminishing a claim or defense that was available to an appellant before the order from which an appeal is taken.[12] Substantial rights under § 25-1902 include those legal rights that a party is entitled to enforce or defend.[13]

[11] In the context of multifaceted special proceedings that are designed to administer the affairs of a person, an order that ends a discrete phase of the proceedings affects a substantial right because it finally resolves the issues raised in that

---

[7] *In re Estate of Larson*, 308 Neb. 240, 953 N.W.2d 535 (2021).

[8] *In re Estate of Beltran, supra* note 3.

[9] *Id.*

[10] See *id.*

[11] *Id.*

[12] *Id.*

[13] *In re Estate of Larson, supra* note 7.

phase.[14] Thus, a consideration regarding the finality of orders in probate cases is whether the order ended a discrete—that is, separate and distinct—phase of the proceedings.[15] A statute provides that "a proceeding for appointment of a personal representative is concluded by an order making or declining the appointment."[16] Here, the probate court's order appointing Kelly as personal representative ended a discrete phase of the probate proceeding. Moreover, the appointment order coupled with the issuance of letters of personal representative imposed fiduciary duties upon Kelly.[17] Because the order was made in a special proceeding and affected a substantial right, it was a final order.

### APPOINTMENT OF KELLY AS
### PERSONAL REPRESENTATIVE

We next consider Kelly's assignment of error alleging that the probate court "erred in appointing [her] as personal representative of the Estate because it lacked jurisdiction to make the appointment, [Kelly] objected to the appointment, and [she] did not accept the appointment as required by Nebraska Revised Statute § 30-2420." During oral arguments, Kelly's counsel argued in connection with this assignment that the letters were not effective. We understand Kelly's assignment of error to encompass a challenge to the issuance of letters of personal representative to an appointee who refuses to qualify.

Several probate statutes speak to qualification of a personal representative. One provides that "to acquire the powers and undertake the duties and liabilities of a personal representative of a decedent, a person must be appointed by order of the court

---

[14] *Id.*, citing John P. Lenich, *What's So Special About Special Proceedings? Making Sense of Nebraska's Final Order Statute*, 80 Neb. L. Rev. 239 (2001).

[15] *In re Estate of Beltran, supra* note 3.

[16] Neb. Rev. Stat. § 30-2407(4) (Reissue 2016).

[17] See Neb. Rev. Stat. § 30-2464 (Reissue 2016).

or registrar, qualify and be issued letters."[18] Another specifies that "the registrar . . . shall appoint the applicant subject to qualification and acceptance."[19] Yet another states that "[p]rior to receiving letters, a personal representative shall qualify by filing with the appointing court any required bond and a statement of acceptance of the duties of the office."[20]

The latter two statutes touch on another important component: acceptance. Acceptance of an appointment denotes consent to the appointment.[21] "Consent is the preliminary essential requirement for an appointment as an executor or administrator."[22]

The Utah Supreme Court addressed the necessity of consent in considering whether a court had the authority to compel an individual to serve as an administratrix against her will.[23] It found support for the requirement in its constitutional and statutory provisions: The Constitution of Utah prohibited "'involuntary servitude,'" while a statute required that prior to issuance of letters testamentary or of administration "'the executor, administrator or guardian must take and subscribe an oath that he will perform according to law the duties of executor, administrator or guardian, which oath must be attached to the letters.'"[24] The court explained the importance of appointing an individual willing to serve:

> A highly personal trust arises from an appointment as administrator and to compel one to serve against his will for the benefit of those to whom he has no obligation

---

[18] Neb. Rev. Stat. § 30-2403 (Reissue 2016).

[19] Neb. Rev. Stat. § 30-2420 (Reissue 2016).

[20] Neb. Rev. Stat. § 30-2444 (Reissue 2016).

[21] See "Accept," Oxford English Dictionary Online, http://www.oed.com/view/Entry/1006 (last visited Feb. 14, 2022) ("[t]o consent to").

[22] 33 C.J.S. *Executors and Administrators* § 88 at 793 (2009). See *Matter of Estate of Cluff*, 587 P.2d 128 (Utah 1978).

[23] See *Matter of Estate of Cluff, supra* note 22.

[24] *Id.* at 129.

would constitute a violation of public policy as well. It is necessary for the protection of estate heirs, creditors, and the general public that an administrator serve free from compulsion and that he only be allowed to serve when so willing. Generally speaking, only a willingness to serve is consistent with proper estate administration and the interest of the Court.[25]

The Utah Supreme Court's reasoning is persuasive. We need not discuss our own constitution, because our statute, as set forth above, requires that "a personal representative shall qualify by filing with the appointing court any required bond and *a statement of acceptance of the duties of the office*."[26] A consequence of acceptance is contained in a different statute: "By accepting appointment, a personal representative submits personally to the jurisdiction of the court in any proceeding relating to the estate that may be instituted by any interested person."[27]

With respect to acceptance, we find some parallels in our recent decision concerning a guardianship.[28] There, the county court directed that a ward's parents be appointed as coguardians upon issuance of letters of guardianship and upon the parents' filing, among other things, an acceptance of appointment. The parents never filed an acceptance. They appealed, assigning that the court erred in ordering them to serve as guardians over their objection. We agreed with the parents that "one who is not willing to serve as a private guardian cannot be compelled to accept such an appointment."[29] And we

---

[25] *Id.* at 129-30.

[26] § 30-2444 (emphasis supplied). See, also, Neb. Ct. R. § 6-1446 (providing for appointment to be set aside where personal representative had been appointed but failed to qualify by filing required bond and acceptance within 60 days of appointment).

[27] Neb. Rev. Stat. § 30-2445 (Reissue 2016).

[28] See *In re Guardianship of Nicholas H.*, 309 Neb. 1, 958 N.W.2d 661 (2021).

[29] *Id.* at 11, 958 N.W.2d at 668.

stated that "[o]nly after a written acceptance is filed and the guardian submits to the personal jurisdiction of the court will letters of guardianship be issued by the court."[30] But in that case, because the parents never accepted the court's appointment, no letters issued. In rejecting the assignment of error, we stated that "the appointment they assign as error was never completed and cannot be completed without their voluntary acceptance."[31]

The record is devoid of any statement of acceptance filed by Kelly. To the contrary, she filed an objection "as nominated personal representative" to the application for informal appointment of personal representative in intestacy and asked the court to dismiss the application. At oral argument, Feik conceded that no acceptance had been filed by Kelly.

[12-14] As we stated with respect to a private guardian, it follows that one who is not willing to serve as a personal representative cannot be compelled to accept such an appointment. Without acceptance by one appointed personal representative, there can be no qualification.[32] And the Nebraska Probate Code requires qualification of a personal representative before the issuance of letters.[33] In other words, in the absence of qualification, the issuance of letters as part of the appointment process is not authorized by statute.

Here, the court issued letters to Kelly without her qualification. Because this action was not statutorily authorized, we reverse the order directing issuance of letters and the letters issued in accordance with that order, and remand the cause for further proceedings.

[15] We express no opinion on the validity or effect of any actions taken in reliance upon the letters issued to Kelly.

---

[30] *Id.*

[31] *Id.* at 11-12, 958 N.W.2d at 669.

[32] See § 30-2444.

[33] See §§ 30-2403, 30-2420, and 30-2444.

Such questions may well exist, but they are beyond the scope of the present probate proceeding. In the absence of an actual case or controversy requiring judicial resolution, it is not the function of the courts to render a judgment that is merely advisory.[34] And to the extent that the reasoning of the county court conveyed in an order within the probate proceeding may seem to express an opinion on matters outside the scope of the appointment proceeding itself, we reverse those portions of the probate court's order.

### Statute of Limitations

Kelly also argues that § 30-2408 prohibited the commencement of the appointment proceeding. The parties agree that it was commenced more than 3 years after Severson's death and that no prior appointment or probate proceeding had occurred. But Kelly contends that no exception under § 30-2408 applies while Feik relies upon the exception in subsection (4), which states that "an informal . . . appointment proceeding may be commenced thereafter if no formal or informal proceeding for probate or proceeding concerning the succession or administration has occurred within the three-year period, but claims other than expenses of administration may not be presented against the estate." We agree with Feik.

[16] The exception applies because no such proceeding had occurred within the 3-year period. Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[35] Over a decade ago, we declared that "[§] 30-2408 clearly permits an informal appointment proceeding to be commenced more than 3 years after the decedent's death 'if no formal or informal proceeding for probate or proceeding concerning the succession or administration has occurred

---

[34] *State ex rel. Peterson v. Ebke*, 303 Neb. 637, 930 N.W.2d 551 (2019).

[35] *In re Estate of Nemetz*, 273 Neb. 918, 735 N.W.2d 363 (2007).

within the three-year period.'"[36] Thus, a proceeding could be commenced here to appoint a personal representative. We read the clause regarding "claims other than expenses of administration" as limiting the scope of the proceeding rather than its commencement.[37]

### REMAINING ASSIGNMENTS OF ERROR

[17] Because we reverse the order directing issuance of letters of personal representative and remand the cause for further proceedings, we need not consider Kelly's other assigned errors. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[38]

### CONCLUSION

Because the court's issuance of letters of personal representative to Kelly as part of the appointment process without Kelly's qualification was not authorized by statute, we reverse the court's actions doing so and remand the cause for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

---

[36] *Id.* at 921, 735 N.W.2d at 367.

[37] See, e.g., *Ader v. Estate of Felger*, 240 Ariz. 32, 375 P.3d 97 (Ariz. App. 2016) (clause limits claims that may be brought in tardy proceeding).

[38] *In re Estate of Hutton*, 306 Neb. 579, 946 N.W.2d 669 (2020).