Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/05/2023 08:06 AM CDT

Dustin L. Paxton, appellee, v. Linda K. Paxton, individually and as Personal Representative of the Estate of Ronald A. Paxton, deceased, appellant.

Dustin L. Paxton, appellee, v. Arlan Paxton, appellant.

Dustin L. Paxton, appellee, v. Linda K. Paxton, Trustee of the Ronald A. Paxton QTIP Trust, appellant.

___ N.W.2d ___

Filed May 5, 2023.    Nos. S-22-469 through S-22-471.

1. **Judgments: Jurisdiction: Appeal and Error.** Determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach its conclusions independent from a trial court.
2. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties.
3. **Jurisdiction: Final Orders: Appeal and Error.** Pursuant to Neb. Rev. Stat. § 25-1911 (Reissue 2016), for an appellate court to acquire jurisdiction of an appeal, the party must be appealing from a final order or a judgment.
4. **Final Orders.** Where implicated, an order must comply with Neb. Rev. Stat. § 25-1315 (Reissue 2016).
5. **Judgments: Final Orders: Words and Phrases.** A final judgment is one that disposes of the case by dismissing it either before hearing is had upon the merits or after trial by rendition of judgment for the plaintiff or defendant.

6. **Judgments: Words and Phrases.** Every direction of a court or judge, made or entered in writing and not included in a judgment, is an order.

7. **Final Orders: Appeal and Error.** In general, an appellate court prohibits immediate appeals from orders so as to avoid piecemeal appeals arising out of the same set of operative facts, chaos in trial procedure, and a succession of appeals in the same case to secure advisory opinion to govern further actions of the trial court.

8. **Final Orders.** Whether an order affects a substantial right depends on whether it affects with finality the rights of the parties in the subject matter.

9. ____. The inquiry of whether a substantial right is affected focuses on whether the right at issue is substantial and whether the court's order has a substantial impact on that right.

10. **Final Orders: Appeal and Error.** An order affects a substantial right when the right would be significantly undermined or irrevocably lost by postponing appellate review.

11. ____: ____. A substantial right is not affected when that right can be effectively vindicated in an appeal from the final judgment.

12. **Final Orders: Legislature: Property Settlement Agreements.** A motion to enforce a settlement agreement is not a remedy specifically provided for by the Legislature as part of a special proceeding.

13. **Jurisdiction: Final Orders: Appeal and Error.** When an appeal presents the two distinct jurisdictional issues of appellate jurisdiction and the trial court's lack of subject matter jurisdiction, the first step is to determine the existence of appellate jurisdiction by determining whether the lower court's order was final and appealable.

Appeals from the District Court for McPherson County: RICHARD A. BIRCH, Judge. Appeals dismissed.

Terrance O. Waite, Daniel J. Greco, and William K. Rounsborg, of Waite & McWha, for appellants.

Warren R. Arganbright and Kurt Dam Arganbright, of Arganbright Law Office, L.L.C., for appellees.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

Freudenberg, J.

## INTRODUCTION

Upon the death of the decedent, an undivided one-half interest in land holdings was retained by the decedent's widow, while the other one-half interest went into a trust for her benefit. Specified parcels of land were to be distributed following her death to each of the decedent's three children, with all remaining property in the trust to be devised in equal shares. Two of the three children and their mother entered into court-ordered mediation of three separate actions brought by one of the children. They signed a "Mediated Settlement Memorandum" (Settlement Memorandum) that described conveying to the plaintiff the parcel set forth in the will to be devised to him. After it became apparent that the defendants did not believe the Settlement Memorandum had resolved all material terms, the plaintiff moved in all three cases for the court to enforce the Settlement Memorandum. After a hearing, the court issued an order finding the Settlement Memorandum to be a "valid and enforceable contract with which the parties are obligated to comply." The defendants appeal from the order. The underlying actions remain pending. We dismiss the appeals for lack of appellate jurisdiction.

## BACKGROUND

These appeals in three cases consolidated for argument and disposition involve a dispute between Dustin L. Paxton; his mother, Linda K. Paxton; and his brother, Arlan Paxton. The dispute arose after the death of Ronald A. Paxton, Linda's husband and Arlan's and Dustin's father, and involves extensive land holdings and ranching operations. With limited exceptions not at issue here, an undivided one-half interest in Ronald and Linda's real estate was transferred into the "Ronald A. Paxton QTIP Trust" (the Trust) after Ronald's death. The other undivided one-half interest is still owned by Linda.

Linda is the personal representative of Ronald's estate and the trustee of the Trust with a right to receive income from and invade the principal of the Trust. Upon Linda's death, certain identified parcels are to pass to Dustin, Arlan, and their sister, Dana Epley (Dana). The residue of the real estate in the Trust is to be divided equally among Dustin, Arlan, and Dana or their issue by representation.

The dispute centers on the specifically identified real estate, consisting of approximately 2,200 acres of land, that is to pass to Dustin after Linda's death. Linda originally leased the land holdings to Dustin and Arlan, but, due to conflicts, she eventually told Dustin she would no longer be leasing land to him. Dustin was not happy with this decision and sought control over the 2,200 acres he was the beneficiary of under the will.

The pleadings for the underlying actions are not in the record on appeal. Case captions demonstrate that one action was brought by Dustin against Linda, individually and as personal representative of Ronald's estate, another action was brought by Dustin against Arlan, and a third action was brought by Dustin against Linda as the trustee of the Trust. According to the parties' briefs, in 2016, Dustin brought suit against Linda, alleging breaches of fiduciary duty and failure to account for assets of the estate and seeking an accounting, her removal, and recoupment. Also in 2016, Dustin brought a separate suit against Arlan for unjust enrichment. Arlan counterclaimed for defamation, commercial disparagement, and tortious interference.

On September 25, 2018, the court ordered the parties to mediate. Dustin, Linda, and Arlan participated in mediation on February 27, 2019. At the end of the day, all three signed the Settlement Memorandum. The Settlement Memorandum provided, among other things, that Linda would "deed" to Dustin her one-half interest in the "Allen, Cooper/Wagner and Lloyd parcels, which parcels were specifically designated to go to Dust[in] in the Trust." The parties agree this is

the 2,200 acres specified to be bequeathed to Dustin upon Linda's death. The Settlement Memorandum further provided that "[t]he Trust will distribute to Dust[in] the real estate designated for [him] in the Trust . . . ."

On March 28, 2019, Dustin's attorney delivered to Linda's attorney a "Settlement Agreement" drafted by Dustin's attorney and signed by Dustin in front of a notary. Linda and Arlan took issue with certain details of this agreement. For example, Linda wanted the conveyance to Dustin to be a gift rather than a purchase and wished for Dustin to pay the costs and potential tax liabilities associated with the transfer. A dispute also arose as to who was to commence and incur the costs of modifying the Trust. The parties recognized that in order to effectuate the transfer of the Trust's undivided one-half interest in the 2,200 acres, a petition would have to be filed pursuant to Neb. Rev. Stat. § 30-3837(b) (Reissue 2016) for the court to approve the modification to the Trust upon the consent of all the beneficiaries, if the court concluded the modification was not inconsistent with a material purpose of the Trust.

Dustin thereafter filed, in all three cases, a motion to enforce the Settlement Memorandum, asking the court for an order requiring Linda and Arlan to comply with the February 27, 2019, Settlement Memorandum. Following a hearing, the court issued the following order: "The Court finds that the . . . Settlement Agreement is a valid and enforceable contract with which the parties are obligated to comply." The court stated generally that "[t]o the extent there are matters unspecified regarding deeds, recording fees, or documentary stamp taxes[,] those matters are specified by statute or other . . . rules of law." It did not elaborate on what the statutes or rules of law specified with respect to any matter not explicitly covered in the Settlement Memorandum.

The court acknowledged there may be "additional steps" Linda needs to take before she can complete the terms of the Settlement Memorandum, which "might result in additional

expenses or taxes," but "[h]ad she desired that her obligations . . . be contingent upon certain occurrences, she could have insisted that those contingencies be included in the memorandum before . . . sign[ing] it." The court did not order any of the parties to take any specific action based on its finding that the Settlement Agreement "is a valid and enforceable contract with which the parties are obligated to comply." The court did not dismiss any of the underlying actions or claims, which remain pending below.

Linda and Arlan appeal.

## ASSIGNMENTS OF ERROR

Linda and Arlan assign, summarized and restated: (1) The district court lacked jurisdiction over the underlying actions, to order mediation, or to find the Settlement Memorandum enforceable, without joining Dana as an indispensable party. To the extent Dana could be considered merely a necessary party, Linda and Arlan assert: (2) The district court erred by "failing to make an on-the-record finding that [Dana's] trust interest was otherwise sufficiently protected for purposes of the Motion to Enforce the . . . Settlement Memorandum."

On the merits of the court's finding that the Settlement Memorandum was enforceable, Linda and Arlan assign that the district court erred by (3) finding the Settlement Memorandum enforceable, after finding its terms were sufficiently specific and mutually agreed upon as to every essential element; (4) failing to recognize the implied conditions precedent of unanimous beneficiary consent and court approval to a trust modification not inconsistent with a material trust purpose; (5) finding enforceable a settlement agreement inconsistent with a material trust purpose and without the consent of all the beneficiaries; (6) finding enforceable a settlement agreement that was abandoned by the parties' conduct after its execution; and (7) basing its decision, in whole or in part, on Dustin's ex parte, posttrial, closing argument brief.

## STANDARD OF REVIEW

[1] Determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach its conclusions independent from a trial court.[1]

## ANALYSIS

[2-4] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties.[2] Pursuant to Neb. Rev. Stat. § 25-1911 (Reissue 2016), for an appellate court to acquire jurisdiction of an appeal, the party must be appealing from a final order or a judgment.[3] Additionally, where implicated, an order must comply with Neb. Rev. Stat. § 25-1315 (Reissue 2016).[4]

[5] A final judgment is one that disposes of the case by dismissing it either before hearing is had upon the merits or after trial by rendition of judgment for the plaintiff or defendant.[5] It must dispose of the case fully and leave nothing for further determination.[6] The order being appealed from here does not dispose fully of the underlying cases, which remain pending below. It was not a final judgment.

[6,7] Every direction of a court or judge, made or entered in writing and not included in a judgment, is an order.[7] In general, this court prohibits immediate appeals from orders so as to avoid piecemeal appeals arising out of the same set of

---

[1] *SID No. 2 of Knox Cty. v. Fischer*, 308 Neb. 791, 957 N.W.2d 154 (2021).

[2] *Mann v. Mann*, 312 Neb. 275, 978 N.W.2d 606 (2022).

[3] See *Florence Lake Investments v. Berg*, 312 Neb. 183, 978 N.W.2d 308 (2022).

[4] *Mann v. Mann, supra* note 2.

[5] *In re Adoption of Madysen S. et al.*, 293 Neb. 646, 879 N.W.2d 34 (2016).

[6] *Ribble v. Furmin*, 69 Neb. 38, 94 N.W. 967 (1903).

[7] See *In re Adoption of Madysen S. et al., supra* note 5.

operative facts, chaos in trial procedure, and a succession of appeals in the same case to secure advisory opinions to govern further actions of the trial court.[8] There are only limited exceptions to the general rule that orders are not immediately appealable.[9] These are set forth in our final order statute, Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2022).

To be a final order subject to appellate review pursuant to § 25-1902, the lower court's order must (1) affect a substantial right and determine the action and prevent a judgment, (2) affect a substantial right and be made during a special proceeding, (3) affect a substantial right and be made on summary application in an action after a judgment is entered, or (4) deny a motion for summary judgment that was based on the assertion of sovereign immunity or the immunity of a government official. We hold that the district court's order finding that the Settlement Agreement "is a valid and enforceable contract with which the parties are obligated to comply" did not affect a substantial right. Thus, it does not satisfy § 25-1902.

[8-11] Whether an order affects a substantial right depends on whether it affects with finality the rights of the parties in the subject matter.[10] The inquiry of whether a substantial right is affected focuses on whether the right at issue is substantial and whether the court's order has a substantial impact on that right.[11] Most fundamentally, an order affects a substantial right when the right would be significantly undermined or irrevocably lost by postponing appellate review.[12] Conversely, a substantial right is not affected when that right can be effectively vindicated in an appeal from the final judgment.[13]

---

[8] See *id.*

[9] See *id.*

[10] *Yori v. Helms*, 307 Neb. 375, 949 N.W.2d 325 (2020).

[11] *Id*.

[12] *Tegra Corp. v. Boeshart*, 311 Neb. 783, 976 N.W.2d 165 (2022).

[13] See *In re Estate of Beltran*, 310 Neb. 174, 964 N.W.2d 714 (2021).

We have held that an order compelling mediation is not a final order, because it neither entails a special proceeding nor affects a substantial right.[14] An order to mediate does not diminish the underlying issues of the action.[15] We have not specifically addressed whether an order declaring a mediated settlement agreement to be enforceable is final for purposes of § 25-1902 and look to other jurisdictions for guidance.

The U.S. Supreme Court in *Digital Equipment Corp. v. Desktop Direct, Inc.*,[16] has held, in the context of the collateral order doctrine, that a privately conferred right by a settlement agreement not to stand trial can be adequately vindicated on appeal from a final judgment and does not justify an immediate appeal. In Florida, whether an order on the enforceability of a settlement agreement is final and immediately appealable depends on whether "further judicial labor is needed."[17] The Appellate Court of Connecticut has held that an order finding a settlement agreement clear and unambiguous and ordering performance was not immediately appealable when further proceedings before a zoning board were required in order to effectuate the agreement.[18] The Connecticut court explained that if the zoning variance could not be obtained, it would be as if no agreement had ever been reached, and that the court would not render a conditional adjudication of the rights of the parties.[19]

Elsewhere, it has been held more broadly that orders to enforce settlement agreements do nothing more than grant a motion in pending litigation, and such orders are not

---

[14] See *Tegra Corp. v. Boeshart, supra* note 12.

[15] See *id.*

[16] *Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 114 S. Ct. 1992, 128 L. Ed. 2d 842 (1994). See, also, e.g., *CP 200 State, LLC v. CIEE, Inc.*, 488 Mass. 847, 179 N.E.3d 45 (2022); *Milton v. Thompson*, 170 N.C. App. 176, 611 S.E.2d 474 (2005).

[17] See *Nastasi v. Thomas*, 88 So. 3d 407, 410 (Fla. App. 2012).

[18] *Vance v. Tassmer*, 115 Conn. App. 696, 975 A.2d 85 (2009).

[19] See *id.*

appealable until the case is at an end through a judgment of the court terminating the litigation.[20] Thus, in *Pattison v. Pattison*,[21] the Court of Special Appeals of Maryland held that an order granting a motion to enforce a settlement agreement in a divorce action that remained pending was not subject to immediate appeal, because there was no benefit lost by waiting until the divorce was granted to appeal the enforceability of the settlement agreement.

Here, we have an order declaring the Settlement Memorandum to be enforceable. It is clear under the facts of these cases cited above that further judicial action is required before all the terms of the Settlement Memorandum can be effectuated and the cases dismissed. Indeed, if modification of the Trust cannot be obtained pursuant to § 30-3837(b), it will be impossible to effectuate the mutuality of obligation that is an essential element of every enforceable contract.[22] Such an occurrence would render moot any opinion in these appeals as to the correctness of the court's order on Dustin's motion to enforce.

[12] While it appears some of the underlying actions may be multifaceted special proceedings, under which we have held an order ending a discrete phase of the proceedings affects a substantial right,[23] the court's order was not made in such a discrete phase of a multifaceted special proceeding. Rather, a motion to enforce falls under motions generally, as described by Neb. Rev. Stat. § 25-908 (Reissue 2016). A motion to enforce a settlement agreement is not a remedy specifically provided for by the Legislature as part of a special proceeding.

---

[20] See *Claxton v. Adams*, 357 Ga. App. 762, 849 S.E.2d 494 (2020).

[21] See *Pattison v. Pattison*, 254 Md. App. 294, 272 A.3d 872 (2022). See, also, *Bishop v. Lattimore*, 137 N.C. App. 339, 530 S.E.2d 554 (2000).

[22] See *Acklie v. Greater Omaha Packing Co.*, 306 Neb. 108, 944 N.W.2d 297 (2020).

[23] See, e.g., *In re Estate of Severson*, 310 Neb. 982, 970 N.W.2d 94 (2022); *In re Estate of Larson*, 308 Neb. 240, 953 N.W.2d 535 (2021).

We have said that certain orders directing the sale of real estate affect a substantial right,[24] but the order in question did not direct the sale of real estate, and again, the parties agree the Trust's undivided one-half interest cannot be conveyed without court approval and Dana's consent. The parties fail to identify what substantial right would be significantly undermined or irrevocably lost by postponing appellate review. We conclude that whatever rights were affected by the court's order, they have not been affected with finality. The mere fact that a person is subjected to inconvenience, annoyance, discomfort, or even expense by an order does not entitle that person to immediately appeal from it.[25]

[13] We hold that we lack appellate jurisdiction. When an appeal presents the two distinct jurisdictional issues of appellate jurisdiction and the trial court's lack of subject matter jurisdiction, the first step is to determine the existence of appellate jurisdiction by determining whether the lower court's order was final and appealable.[26] Therefore, our opinion does not reach the question of whether Dana was an indispensable party to any of the underlying proceedings, the order to mediate, the Settlement Memorandum, or the proceedings on Dustin's motion to enforce.

## CONCLUSION

Linda and Dustin's appeals are dismissed for lack of appellate jurisdiction.

APPEALS DISMISSED.

---

[24] See *In re Estate of McKillip*, 284 Neb. 367, 820 N.W.2d 868 (2012).

[25] *Tegra Corp. v. Boeshart, supra* note 12.

[26] *Webb v. Nebraska Dept. of Health & Human Servs.*, 301 Neb. 810, 920 N.W.2d 268 (2018).