Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/02/2024 09:08 AM CST

Christopher Mathiesen, appellant, v. Kristi
Kellogg and Apostle Nursing Home
Health Care, LLC, appellees.

___ N.W.2d ___

Filed February 2, 2024.    No. S-23-157.

1. **Jurisdiction: Appeal and Error.** A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law.

2. **Appeal and Error.** Where the assignments of error consist of headings or subparts of arguments and are not within a designated assignments of error section, an appellate court may proceed as though the party failed to file a brief, providing no review at all, or, alternatively, may examine the proceedings for plain error.

3. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.

4. **Jurisdiction: Statutes: Appeal and Error.** The requirements of a statute underlying a right to appeal are mandatory and must be complied with before the appellate court acquires jurisdiction over the subject matter of the action.

5. **Jurisdiction: Final Orders: Appeal and Error.** Pursuant to Neb. Rev. Stat. § 25-1911 (Reissue 2016), for an appellate court to acquire jurisdiction of an appeal, the party must be appealing from a final order or a judgment; additionally, where implicated, an order must comply with Neb. Rev. Stat. § 25-1315 (Reissue 2016).

6. **Actions: Words and Phrases.** The term "action" is a comprehensive one and is applicable to almost any proceeding in a court of justice by which an individual pursues that remedy which the law affords.

7. **Judgments.** A judgment must dispose of the case fully and leave nothing for further determination.

8. \_\_\_\_. A judgment under Neb. Rev. Stat. § 25-1301 (Cum. Supp. 2018) is one that disposes of the case either by dismissing it before hearing

is had upon the merits, or after trial by rendition of judgment for the plaintiff or defendant.

9. **Judgments: Words and Phrases.** Every direction of a court or judge, made or entered in writing and not included in a judgment, is an order.

10. **Actions: Judgments.** Where several actions are pending that might have been brought as a single action, an order of consolidation that is not expressly limited to a particular purpose merges the cases into one action for all purposes, the cases thereby losing their individual identity and becoming a single action in which a single judgment is rendered.

11. **Claims: Parties.** Neb. Rev. Stat. § 25-1315(1) (Reissue 2016) is implicated only when a case presents more than one claim for relief or involves multiple parties, and the court enters an order which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties.

12. **Claims: Final Orders: Appeal and Error.** When a case involves multiple claims for relief and the court has entered an order adjudicating fewer than all the claims, absent a specific statute governing the appeal providing otherwise, Neb. Rev. Stat. § 25-1315 (Reissue 2016) controls and mandates that the order is not immediately appealable unless the lower court issues an express direction for the entry of judgment and an express determination that there is no just reason for delay.

Appeal from the District Court for Douglas County: Timothy P. Burns, Judge. Appeal dismissed.

Christopher Mathiesen, pro se.

Christian T. Williams, of Domina Law Group, P.C., L.L.O., for appellee Kristi Kellogg.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.

## INTRODUCTION

Christopher Mathiesen, an owner of a limited liability company, is appealing an order dismissing his complaint filed under case No. CI 22-7857 (CI 22-7857) against Kristi Kellogg, who was alleged to be a co-owner of the company. The court's order of dismissal occurred after CI 22-7857 was consolidated with case No. CI 20-2255 (CI 20-2255).

CI 20-2255 involves several different claims and counterclaims between the same parties that are based on the same basic underlying facts. In dismissing CI 22-7857, the court reasoned that CI 22-7857 had no function but to avoid the progression order filed in CI 20-2255. The court's order stated, "CI 22-7857 is abated and dismissed." The claims filed under CI 20-2255 remain pending below for trial. We find that we lack jurisdiction over Mathiesen's appeal.

## BACKGROUND

### CI 20-2255

The litigation between the parties began under CI 20-2255 in the district court for Douglas County. The operative first amended complaint in CI 20-2255 was filed on July 1, 2020, by Kellogg against Mathiesen as the defendant and Apostle Nursing Home Health Care, LLC (Apostle), as a nominal party. Kellogg set forth that she was bringing the action as a derivative suit pursuant to Neb. Rev. Stat. § 21-165 (Reissue 2022).

The complaint described the formation of Apostle in 2017 for the purpose of providing home nursing care services and claimed that Kellogg and Mathiesen are each 50-percent owner-members. Kellogg stated that from August 2017 to February 2019, Mathiesen was not a co-owner of Apostle. This arrangement was so Apostle could be eligible for Medicare and Medicaid programs despite a conviction on Mathiesen's record for criminal assault. Mathiesen regained his 50-percent ownership interest in February 2019.

Kellogg alleged various acts by Mathiesen of fraud, corporate waste, embezzlement, and threatening behavior toward Apostle employees. Based on these actions, she made claims for breaches of fiduciary duty under Neb. Rev. Stat. § 21-138 (Reissue 2022), wrongful disassociation under Neb. Rev. Stat. § 21-145 (Reissue 2022), tortious interference with business expectancies, conversion, judicial expulsion pursuant to § 21-145, and temporary and permanent injunctions.

In October 2020, Mathiesen filed a counterclaim against Kellogg under CI 20-2255. In the operative amended counterclaim filed in November 2021, Mathiesen alleged he was the sole owner of Apostle when its articles of incorporation were filed with the Nebraska Secretary of State. Mathiesen thereafter entered into discussions with Kellogg to become a co-owner, whereby, according to Mathiesen, he and Kellogg agreed that they would "'start out as 50/50 owners,'" but that their percentages of ownership would change to correspond to the money they invested. Mathiesen alleged Kellogg has never invested any money into Apostle.

When Mathiesen realized a past misdemeanor conviction would prevent him from registering Apostle with Medicaid, he and Kellogg agreed his management interest in Apostle would be transferred to Kellogg for approximately 7 months, subject to Mathiesen's continued membership in Apostle and to his capital investments. They agreed his capital investments would remain debts of Apostle owed to him. Mathiesen's 50-percent interest was transferred back to him in February 2019. Mathiesen alleged that he has a capital account with Apostle in the amount of approximately $17,500.

Mathiesen alleged he terminated Kellogg from employment in March 2020 for making unauthorized transactions and for misappropriating Apostle funds. According to Mathiesen, Kellogg's alleged misappropriations have resulted in Kellogg's having equity in the negative amount of approximately $43,000.

Mathiesen asserted nine causes of action in his counterclaim against Kellogg.

First, Mathiesen made a claim against Kellogg for breaches of fiduciary duties. He alleged embezzlement and waste of company funds, unnecessary and fraudulent claims filed in the name of Apostle, and fraudulent claims filed against Mathiesen to state agencies. He also alleged Kellogg's preventing Mathiesen from exercising his control and authority over Apostle, failing to bill for services provided, allowing

an employee to violate a noncompete agreement, and making unilateral management decisions.

Second, Mathiesen made a claim against Kellogg for dissociation pursuant to § 21-145, based upon Kellogg's lack of capital contributions, the alleged misappropriation, breach (including by filing the present lawsuit) of the operating agreement that gave Mathiesen exclusive control over all financial affairs, and other wrongful conduct.

Third, Mathiesen alleged tortious interference and loss of business opportunity relating to Mathiesen's attempt to purchase a daycare facility for the children of Apostle's employees and clients, preventing the purchase of a second van for transportation services, and filing the underlying lawsuit.

Fourth, Mathiesen alleged conversion based on Kellogg's allegedly unauthorized dominion over Apostle's assets and waste of financial resources, filing the underlying allegedly frivolous lawsuit, using company funds to pay personal expenses, and making unilateral management decisions.

Fifth, Mathiesen alleged malicious prosecution.

Sixth, Mathiesen sought temporary and permanent injunctions to prevent Kellogg from exercising authority over Apostle, using Apostle funds, and contacting employees, contractors, or business relations.

Seventh, Mathiesen alleged that Kellogg breached a 2017 equity agreement and a 2019 equity and asset purchase agreement, including a clause whereby Kellogg would hold Mathiesen harmless and indemnify him for any claims arising from actions before February 2019.

Eighth, Mathiesen alleged defamation relating to Kellogg's accusations that Mathiesen had abused clients, violated criminal laws, and committed fraudulent business practices.

Ninth, Mathiesen alleged spoilation from Kellogg's purported shredding of documents.

Mathiesen generally asked the court to declare that he is the 100-percent owner of Apostle and to issue a monetary judgment against Kellogg, as well as injunctive relief.

### CI 22-7857

On October 11, 2022, Mathiesen, acting pro se, filed in the district court for Douglas County a "Verified Complaint for Equitable Accounting" against Kellogg, as a defendant, and Apostle, as a nominal party. The action was filed under a new case number, CI 22-7857, and assigned to Judge Horacio J. Wheelock.

With minor variances, the factual allegations of the complaint for equitable accounting are identical to those set forth in the operative counterclaim in CI 20-2255. Additionally, the complaint made allegations pertaining to the court's rulings in CI 20-2255. These included the allegation that the court had erroneously overruled Mathiesen's motion for summary judgment "without requiring [Kellogg] to confront his evidence and account for her financial misappropriations or account for her claimed transferable interest." Also, Mathiesen described various discovery requests in CI 20-2255 "aimed at having [Kellogg] account for her claimed transferable interest in Apostle" and alleged that the court, "without any explanation," overruled his motion to compel that "would have essentially required [Kellogg] to provide an accounting." Mathiesen asserted that, in a meeting with counsel in chambers in relation to a motion by Mathiesen to expand discovery to compel Kellogg to provide an accounting for her claimed transferable interest, the district court told Mathiesen's counsel that it would not make Kellogg account for the moneys she misappropriated. It stated:

> Instead, it is understood that should this matter proceed to a bench trial, the District Court will force . . . Mathiesen to prove that his transferable interest is, in fact, a transferable interest, and that after he calculates [Kellogg's] negative equitable balance, she will be ordered to repay that amount and Apostle will refund any monies contributed by . . . Mathiesen. After that, it appears, the District Court will force a sale of Apostle's assets and divide them evenly between [Kellogg] and [Mathiesen].

Mathiesen complained that Kellogg "has somehow survived nearly three years pursuing her derivative claims without having to account for where her transferable interest comes from."

Mathiesen asserted that despite making repeated demands in CI 20-2255 that Kellogg account for her misappropriations of Apostle funds and for her claimed transferable interest, "[s]uch demands have been unavailing and it appears that the District Court does not believe that . . . Mathiesen has the right to compel [Kellogg] to account to him in the CI 20-2255 action." Because of the district court's "refus[al] to act," Mathiesen "has no choice but to commence a formal accounting action to ensure that [Kellogg] provides a full and thorough equitable accounting of the funds that she has taken, the monies she owes to Apostle, and the deprivation of all [Mathiesen's] interests in Apostle."

As the first cause of action set forth in his complaint in CI 22-7857, Mathiesen stated he was seeking an accounting. As his second cause of action, Mathiesen sought judicial enforcement of his vote expelling Kellogg as a member of Apostle. Mathiesen requested consolidation of CI 22-7857 with the pending CI 20-2255 lawsuit.

Kellogg likewise moved to consolidate CI 22-7857 with CI 20-2255, requesting the consolidated action be overseen by Judge Timothy P. Burns, who had been overseeing CI 20-2255 for the previous 2 years. Kellogg requested that the complaint in CI 22-7857 be dismissed under Neb. Ct. R. Pldg. § 6-1112(b)(6) and (f) on the grounds that it failed to state a claim upon which relief could be granted and contained allegations that were redundant to the allegations contained in the pleadings in CI 20-2255 or to those allegations that were the subject of a motion for summary judgment and summarily rejected. Kellogg asserted that Mathiesen's lawsuit in CI 22-7857 was an attempt to circumvent the court's progression order in CI 20-2255. She requested that the motion to dismiss be set for hearing after the cases were consolidated.

Consolidated Action

On November 3, 2022, Judge Wheelock, in CI 22-7857, ordered the "clerk shall transfer this matter to Judge . . . Burns to be consolidated with . . . CI 20-2255." Judge Wheelock declined to make any determination on Kellogg's motion to dismiss or strike, leaving the motion to be resolved following transfer.

Following consolidation, on December 9, 2022, Mathiesen filed a motion for summary judgment under CI 22-7857, asserting there was no genuine issue that Kellogg owed him a fiduciary duty to account for all expenditures of Apostle funds.

In an order dated February 10, 2023, under a caption listing only CI 22-7857's case number, Judge Burns granted Kellogg's motion to dismiss, stating, "CI 22-7857 is abated and dismissed." The court explained that after examining the pleadings in each matter, it agreed the filing of CI 22-7857 had no function but to avoid the progression order filed in CI 20-2255, under which the parties were to be prepared for trial by January 15, 2022. CI 20-2255, said the court, deals with the same parties and subject matter and offers a complete remedy to the parties. The court did not directly address Mathiesen's pending motion for summary judgment.

On March 1, 2023, Mathiesen filed a notice of appeal from the district court's "judgment, decree or . . . final order entered denying [his] Complaint for Equitable Accounting, and from all adverse rulings and orders entered therein."

The claims made under CI 20-2255 remain pending for trial.

ASSIGNMENTS OF ERROR

Mathiesen's brief lacks an assignments of error section.

STANDARD OF REVIEW

[1] A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law.[1]

---

[1] *Mann v. Mann*, 312 Neb. 275, 978 N.W.2d 606 (2022).

[2] Where the assignments of error consist of headings or subparts of arguments and are not within a designated assignments of error section, an appellate court may proceed as though the party failed to file a brief, providing no review at all, or, alternatively, may examine the proceedings for plain error.[2]

## ANALYSIS

[3,4] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[3] The Nebraska Constitution expressly provides for "such appellate jurisdiction as may be provided by law."[4] The requirements of a statute underlying a right to appeal are mandatory and must be complied with before the appellate court acquires jurisdiction over the subject matter of the action.[5]

[5] Pursuant to Neb. Rev. Stat. § 25-1911 (Reissue 2016), for an appellate court to acquire jurisdiction of an appeal, the party must be appealing from a final order or a judgment.[6] Additionally, where implicated, an order must comply with Neb. Rev. Stat. § 25-1315 (Reissue 2016).[7]

[6] Neb. Rev. Stat. § 25-1301(1) (Cum. Supp. 2018) defines a judgment as "the final determination of the rights of the parties in an action." The term "action" is a comprehensive one and is applicable to almost any proceeding in a court of

---

[2] *Haynes v. Nebraska Dept. of Corr. Servs.*, 314 Neb. 771, 993 N.W.2d 97 (2023).

[3] *McPherson v. Walgreens Boot Alliance*, 314 Neb. 875, 993 N.W.2d 679 (2023).

[4] Neb. Const. art. V, § 2.

[5] *Swicord v. Police Stds. Adv. Council*, 314 Neb. 816, 993 N.W.2d 327 (2023).

[6] *Paxton v. Paxton*, 314 Neb. 197, 989 N.W.2d 420 (2023).

[7] *Id.*

justice by which an individual pursues that remedy which the law affords.[8]

[7-9] A judgment must dispose of the case fully and leave nothing for further determination.[9] A judgment under § 25-1301 is one that disposes of the case either by dismissing it before a hearing is had upon the merits, or after trial by rendition of judgment for the plaintiff or defendant. Conversely, every direction of a court or judge, made or entered in writing and not included in a judgment, is an order.[10]

If CI 22-7857 had not been consolidated with CI 20-2255 at the time of the court's order of dismissal, the order would have fully disposed of the action commenced by the filing of CI 22-7857, since the dismissal of CI 22-7857 implicitly denied Mathiesen's motion for summary judgment and fully disposed of all claims asserted under that case number. But the court entered its order of dismissal after the court ordered CI 22-7857 to be consolidated with CI 20-2255, whereby they became one action.

Neb. Rev. Stat. § 25-703 (Reissue 2016) provides:

> Whenever two or more actions are pending in the same court which might have been joined, the defendant may, on motion and notice to the adverse party, require him to show cause why the same shall not be consolidated, and if no such cause be shown, the said several actions shall be consolidated.

Neb. Rev. Stat. § 25-704 (Reissue 2016) provides: "The order for consolidation may be made by the court or by a judge thereof in vacation." Under Nebraska's liberal joinder rules, a case can involve multiple plaintiffs, multiple defendants, and multiple claims for relief, including counterclaims, cross-claims, and third-party claims.[11]

---

[8] *Champion v. Hall County*, 309 Neb. 55, 958 N.W.2d 396 (2021).

[9] *Paxton v. Paxton, supra* note 6.

[10] *Boyd v. Cook*, 298 Neb. 819, 906 N.W.2d 31 (2018).

[11] *Mann v. Mann, supra* note 1.

[10] It has been said that there is a marked distinction between an actual consolidation and an order that the cases merely be tried together for convenience.[12] "The latter is often spoken of as a 'consolidation for trial,' though it is not a consolidation in the strict meaning of that term."[13] Where several actions are pending that might have been brought as a single action, an order of consolidation that is not expressly limited to a particular purpose merges the cases into one action for all purposes, the cases thereby losing their individual identity and becoming a single action in which a single judgment is rendered.[14]

Thus, in *Pahl v. Sprague*,[15] where two separate actions were consolidated and resulted in a singular verdict, but the parties appealed the cases separately with two separate transcripts and separate briefing and argument, we disposed of the appeals as one case in one opinion. In so doing, we also reasoned that the court's order that granted a new trial necessarily did so for the entire consolidated controversy. Thus, the court lacked the power to subsequently deny a motion for new trial and dismiss the petition of one of the two consolidated cases, in the absence of a motion for judgment notwithstanding the verdict. We explained:

> [T]his court has heretofore established that when the cases were properly consolidated for trial they became one case, after which the parties were in no different position than they would have been had [the plaintiff]

---

[12] *Kennedy v. Emp. St. Und'rs of Watertown, N. Y.*, 202 S.C. 38, 24 S.E.2d 78 (1943). See, also, e.g., *Kight v. American Eagle Fire Ins. Co. of New York*, 125 Fla. 608, 170 So. 664 (1936).

[13] *Kennedy v. Emp. St. Und'rs of Watertown, N. Y., supra* note 12, 202 S.C. at 40, 24 S.E.2d at 79.

[14] See 1A C.J.S. *Actions* § 245 (2016). See, also, e.g., *McCoy v. Scavuzzo*, 250 S.W.3d 1 (Mo. App. 2008); *McKinney v. Greenville Ice & Fuel Co.*, 232 S.C. 257, 101 S.E.2d 659 (1958); *Hull v. Shannon*, 139 Misc. 564, 249 N.Y.S. 33 (1931).

[15] *Pahl v. Sprague*, 152 Neb. 681, 42 N.W.2d 367 (1950).

filed a petition and defendant a cross-petition in the same action, wherein one verdict and judgment would dispose of the entire controversy.[16]

Likewise, in *Schallenberg v. Kroeger*,[17] we held that in cases that were initially brought separately but were later consolidated, the court's order vacating the decree purportedly only as to one of the cases in fact vacated the decree as to both. This was because "[w]hen the cases were consolidated for trial, they became one case."[18] We explained that once the cases had been consolidated, "the parties were in no different position than they would have been in" had the defendant "filed a cross-petition . . . instead of commencing a separate suit asking such relief."[19]

On November 3, 2022, the court in the present matter did not order that the two cases be merely tried together or consolidated for some other limited purpose. Rather, the court broadly ordered that CI 22-7857 be consolidated with CI 20-2255, stating that the "clerk shall transfer this matter to Judge . . . Burns to be consolidated with . . . CI 20-2255." As a result, CI 22-7857 became a single action with CI 20-2255. CI 22-7857 and CI 20-2255 lost their individual identities.

Mathiesen relies on the U.S. Supreme Court case of *Hall v. Hall*[20] to argue that CI 22-7857 and CI 20-2255 maintained their separate identities, at least for purposes of appellate jurisdiction. However, *Hall* involved the interpretation of a federal consolidation rule and is inapposite to joinder under Nebraska law. The Court in *Hall* interpreted Fed. R. Civ. P. 42(a)(2) consistently with a long line of federal case law construing federal consolidation statutes as

---

[16] *Id.* at 684, 42 N.W.2d at 370.

[17] *Schallenberg v. Kroeger*, 77 Neb. 738, 110 N.W. 664 (1906). See, also, *Reed v. Wellman*, 104 Neb. 295, 177 N.W. 171 (1920).

[18] *Schallenberg v. Kroeger, supra* note 17, 77 Neb. at 740, 110 N.W. at 665.

[19] *Id.*

[20] *Hall v. Hall*, 584 U.S. 59, 138 S. Ct. 1118, 200 L. Ed. 2d 399 (2018).

accomplishing the joining together of constituent cases for more efficient case management but "not as completely merging the constituent cases into one."[21] Thus, under federal consolidation statutes, consolidated cases were to have separate verdicts, judgments, or decrees.[22] Our consolidation statute is not modeled after the federal rule, and our jurisprudence on the subject is fundamentally distinct. As discussed, we have long held in Nebraska that consolidated cases become "one case"[23] ending in a singular judgment and shall not be treated any differently than if the claims had originally been made in a singular action. We see no reason to depart from this precedent when considering whether we have appellate jurisdiction under § 25-1911.

Because in Nebraska, cases that are consolidated for all purposes become "one case," the "action" for purposes of determining whether there was a "final determination of the rights of the parties in an action" under § 25-1301(1) included the pleadings filed under both case numbers. This means that the court's order on February 10, 2023, stating that "CI 22-7857 is abated and dismissed," dismissed any causes of action alleged in Mathiesen's complaint that was initially filed under CI 22-7857, which causes of action were not duplicated in his counterclaims originally filed under CI 20-2255. However, it did not result in a judgment as defined by § 25-1301(1).

Because the February 10, 2023, order was not a judgment, for this court to have appellate jurisdiction, the February 10 order must be a final order as defined by Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2022). Additionally, if implicated, it must comply with § 25-1315.

[11] By its terms, § 25-1315(1) is implicated only when a case presents more than one claim for relief or involves

---

[21] *Id.*, 584 U.S. at 67.

[22] See *Hall v. Hall, supra* note 20.

[23] *Schallenberg v. Kroeger, supra* note 17, 77 Neb. at 740, 110 N.W. at 665.

multiple parties, and the court enters an order which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties.[24] Section 25-1315 provides:

(1) When more than one claim for relief is presented in an action, whether as a claim, counterclaim, crossclaim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

(2) When a court has ordered a final judgment under the conditions stated in subsection (1) of this section, the court may stay enforcement of that judgment until the entry of a subsequent judgment or judgments and may prescribe such conditions as are necessary to secure the benefit thereof to the party in whose favor the judgment is entered.

[12] Before the enactment of § 25-1315, the dismissal of one of multiple causes of action was a final, appealable order.[25] Section 25-1315(1), however, was intended to prevent interlocutory appeals, not make them easier,[26] limiting immediate appealability to circumstances evaluated by the lower court as presenting no just reason for delay. When a

---

[24] See *Mann v. Mann, supra* note 1.

[25] See *Poppert v. Dicke*, 275 Neb. 562, 747 N.W.2d 629 (2008).

[26] *Cerny v. Todco Barricade Co.*, 273 Neb. 800, 733 N.W.2d 877 (2007).

case involves multiple claims for relief and the court has entered an order adjudicating fewer than all the claims, absent a specific statute governing the appeal providing otherwise, § 25-1315 controls and mandates that the order is not immediately appealable unless the lower court issues an "'express direction for the entry of judgment'" and "'an express determination that there is no just reason for delay.'"[27] These requirements apply to any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties, even if the order otherwise satisfies one of the final order categories in § 25-1902(1).[28]

The consolidated action involving Apostle presents more than one claim for relief. Claims made by Kellogg on behalf of Apostle included breach of fiduciary duty, wrongful disassociation, tortious interference, conversion, and judicial expulsion. Mathiesen counterclaimed for breach of fiduciary duty, dissociation, tortious interference, conversion, malicious prosecution, breach of contract, and defamation. None of these claims were adjudicated by the February 10, 2023, order Mathiesen appeals from. The February 10 order dismissed only the claims made in the complaint filed under CI 22-7857, which were for an accounting and judicial enforcement of Mathiesen's vote expelling Kellogg as a member of Apostle.

The district court did not issue an express direction pursuant to § 25-1315 for the entry of judgment, and it did not make an express determination there was no just reason to delay appellate review of its decision abating and dismissing the complaint filed under CI 22-7857. Even assuming an order abating and dismissing claims is a final order pursuant to § 25-1902, § 25-1315 does not permit an appeal from the court's February 10, 2023, order because the court did not make the express entry of judgment and determination

---

[27] See *TDP Phase One v. The Club at the Yard*, 307 Neb. 795, 800, 950 N.W.2d 640, 645-46 (2020).

[28] See *Mann v. Mann, supra* note 1.

described by § 25-1315. As a result, we lack appellate jurisdiction over the present appeal.

CONCLUSION

The appeal is dismissed for lack of appellate jurisdiction.

Appeal dismissed.